OPINION OF THE COURT
William J. Davis, J.
Defendant New York Life Insurance Co. (New York Life) moves for an order, pursuant to CPLR 3211 (a) (7), dismissing the complaint on the ground that it fails to state a cause of action and, pursuant to CPLR 3212, granting summary judgment dismissing the complaint.
This is a personal injury action. Plaintiff Zoila Castro (Castro), a cleaning worker employed by the American Building Maintenance Company, alleges she sustained personal injuries on June 22, 1989 when she was stuck in the right thumb by a used hypodermic needle and syringe found in a small waste container kept in the fifth floor offices maintained by New York Life at the premises known as 888 Seventh Avenue, New York, New York.
At about 8:30 p.m., Castro was transferring garbage from a small waste container into a larger one in defendant’s office when she pushed down on the garbage inside (apparently in an effort to make it compact) and was stuck by a used hypodermic needle and syringe. The incident occurred while Castro had been working in the normal course of her employment.
On June 23, 1989, Castro was treated at Coney Island Hospital, Brooklyn, New York. She has returned to the hospital’s out-patient clinic nearly every month thereafter for *3 follow-up testing. She also receives treatment on a regular basis from Dr. Melvin Shulman, a psychiatrist.
The complaint alleges two causes of action. The first cause alleges that the injuries sustained by Castro were due solely to the negligence of New York Life in the operation, maintenance and control of the office, and that the defendant’s negligence includes its failure to properly dispose of the used hypodermic needle and syringe (i.e., hazardous medical waste) in a manner provided by statutory laws, regulations and local ordinances. It is also alleged that as a consequence of the defendant’s negligence, Castro sustained a hypodermic needle puncture wound to the right thumb; possible contamination with hepatitis; possible exposure to the HIV virus which could develop into Acquired Immune Deficiency Syndrome (AIDS); the need to undergo various diagnostic tests; generalized anxiety disorder and a variety of medical problems, including headaches, depression, nightmares and sleeplessness.
The second cause of action alleges that coplaintiíf Osvaldo Castro, Zoila Castro’s husband, has lost the care, comfort, companionship and consortium of his wife as a result of the injuries caused by New York Life.
In its answer, defendant denies the material allegations of the complaint and asserts three affirmative defenses: (1) comparative negligence; (2) compliance in maintenance of its offices with existing law; and (3) that defendant’s liability, if any, should be limited to the equitable share of total liability pursuant to CPLR 1601.
A party may move for judgment, dismissing one or more causes of action asserted, on the ground that the pleading fails to state a cause of action (CPLR 3211 [a] [7]). However, on a motion to dismiss a cause of action or defense based on the pleading itself, the material allegations are deemed to be true and everything reasonably to be implied therefrom (Rovello v Orofina Realty Co., 40 NY2d 633). When extrinsic evidence is introduced attacking the complaint, the truthfulness of the pleading allegations is not assumed; the inquiry is as to whether the pleader has a cause of action or defense, not whether one has been properly stated (supra; see also, 219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506).
In support of the motion, New York Life specifically attacks the allegation that the puncture sustained by Castro exposed her to the possibility of developing AIDS. Defendant asserts that no cause of action may be maintained solely on the basis *4 of risk or fear of developing AIDS in the future absent evidence that evinces such a degree of probability that it amounts to a reasonable certainty that the disease will manifest itself.
Defendant avers that Castro testified at a deposition that she was tested for the HIV virus at the New York City Department of Health and Hospital Corporation a few months after the alleged incident and then later at Coney Island Hospital. Defendant contends that Castro refused to reveal the result of the tests at the deposition and that the only evidence adduced by plaintiff that she will develop AIDS as a result of the "needle prick” is based on "ignorance, fear and hysteria” on her part, and that of her co-workers who later learned about the alleged incident. Defendant further contends Castro’s fear of developing AIDS is wholly speculative, subjective and unsupported by any proffered medical evidence despite her repeated follow-up medical examinations.
Castro asserts that employees of defendant had been taking blood samples from prospective life insurance applicants and discarding the used hypodermic needles and syringes in ordinary waste containers, in violation of State law. She contends that medical records from Coney Island Hospital state she sustained physical injury described as a "hypodermic puncture wound to [the] right thumb,” and that she suffered an "anxiety reaction secondary” to the puncture. Castro further contends that the hospital sent her for HIV virus testing, which has continued on a regular basis.
Plaintiff further contends that medical records of July, December and February 1989 by Dr. Shulman indicate she was suffering from a "generalized anxiety disorder secondary to the incident of June 22, 1989,” and that this condition was directly related to the incident alleged herein.
To recover on her negligence claim alleging physical injury to her right thumb, plaintiff must establish the existence of a duty owed to her by New York Life, breach of that duty, a reasonably close causal connection between the contact and the resulting injury and actual loss, harm, or damage (see, Febesh v Elcejay Inn Corp., 157 AD2d 102). Moreover, where mental anguish and emotional distress arising from "AIDS phobia,” (i.e., fear of contracting the AIDS disease) is alleged, it must be proven that the condition suffered is a direct result of the defendant’s breach of that duty and that the breach was the proximate cause of ensuing injuries (see, Hare v State *5 of New York, 143 Misc 2d 281). Prospective consequences must be expected to flow with reasonable certainty from the harm. (Supra.) An unfounded fear that some harm will result in the future is not compensable (see generally, Martinez v Long Is. Jewish Hillside Med. Center, 70 NY2d 697, 699; Ace v State of New York, 146 Misc 2d 954, 959).
If a claim can be tied to a distinct event which could cause a reasonable person to develop a fear of contracting a disease like AIDS, there is a guarantee of genuineness of the claim. It is only where the causal connection between the original injury and the ultimate damage may be said to be too tenuous that an original wrongdoer will be freed from liability for the ultimate damage (see, Ferrara v Galluchio, 5 NY2d 16, 20).
In the case at bar, extrinsic evidence has been submitted by defendant which attacks the complaint. The truthfulness of the pleading allegations, therefore, is not assumed and the court’s inquiry is as to whether the plaintiff has a cause of action (Rovello v Orofino Realty Co., supra; 219 Broadway Corp. v Alexander’s, Inc., supra).
A copy of a medical report dated June 23, 1989 from Coney Island Hospital which was submitted by Castro in opposition to the motion clearly states that she was treated for a "hypodermic puncture wound on the right thumb” and that she received a tetanus shot. Although Castro has the burden of proof at trial that this injury occurred as a result of New York Life’s negligence, defendant has failed to demonstrate that the claim is without merit. It offers no evidence to show this.
In addition, in a letter dated July 27, 1989 from Dr. Shulman to plaintiff’s counsel, the doctor indicates that Castro attended four "psychiatric consultation sessions” with him on July 6, 12, 19 and 26. Dr. Shulman states that within a few days of the puncture to her thumb Castro developed "a massive and overwhelming fear that she had contracted AIDS and would die soon.” He then fully describes plaintiff’s symptoms.
The doctor determined Castro was "disabled by her nervous reaction” and that she could not return to work. His diagnosis of her condition is "Generalized Anxiety Disorder, acute, severe, disabling with multiple neurotic symptomatology, secondary to the incident of June 22, 1989,” and that plaintiff’s "psychiatric reaction was 100% causally related to the incident of June 22, 1989.”
*6 "Prior to 1981, the syndrome presently known as 'AIDS’ was unknown. In June and July of 1981, the Center for Disease Control described an unexplained unusual outbreak of opportunistic infections in homosexual men * * * In April of 1984 [after years of research], a specific virus [i.e., HIV] was identified as the causative agent for AIDS. In March of 1985, a laboratory test to screen for antibodies to the AIDS virus was approved by the Federal Drug Administration and released for use” (Krygier v Airweld, Inc., NYLJ, Jan. 10, 1991, at 27, col 4).
The overwhelming consensus of medical opinion is clear: the HIV virus is not spread casually. Rather, it has specific and well-known modes of transmission through sexual contact, exposure to infected blood, or blood components, and perinatally from mother to infant (see, Recommendations For Prevention of HIV Transmission In Health Care Settings, 36 Morbidity and Mortality Weekly Report Supp No. 2S, at 3S [Aug. 1987]).
Moreover, even though the AIDS disease is still not completely understood by the medical profession, it is known to have a dormant quality which may not manifest itself in its victims for many years after a person is exposed to the HIV virus. A victim of AIDS may not be aware of the adverse affects of the disease until long after exposure (see, Di Marco v Hudson Val. Blood Servs., 147 AD2d 156, 160).
Here, Castro’s claim for mental anguish and "AIDS Phobia” is directly tied to the date on which she allegedly received the hypodermic puncture to her right thumb. Given the massive informational campaign waged by Federal, State and local health officials over the last few years in an effort to educate the public about this dreadful disease, any reasonable person exposed to this information who is stuck by a used and discarded hypodermic needle and syringe from which blood was apparently drawn could develop a fear of contracting AIDS (see, Ferrara v Galluchio, supra).
The medical community has been unwavering in its view that the HIV virus can be transmitted through the blood. Castro testified at her deposition that she had seen commercials about the disease on television. She was therefore aware of the possibility of contracting the disease through HIV contaminated blood. Clearly, then, there exists here a basis to guarantee the genuineness of her claim (Ferraro v Galluchio, supra).
*7 Accordingly, defendant’s motion to dismiss the complaint on the ground that it fails to state a cause of action is denied. Defendant’s motion for summary judgment is also denied. Defendant has failed to support the motion with an affidavit by a person having knowledge of the facts (see, CPLR 3212 [b]).