285 N.J. Super. 183 (1995)
666 A.2d 627
CARMEN DE MILIO AND DENISE DE MILIO, HUSBAND AND WIFE, PLAINTIFFS,
v.
DR. PHILIP SCHRAGER, JOHN DOES 1-4, FICTITIOUS NAMES FOR PERSONS AND/OR ENTITIES UNKNOWN, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided July 14, 1995.
*187 William J. Shipers for plaintiff (Shamy, Shipers & Lonski, attorneys).
Alan J. Baratz, for defendant (Weiner Lesniak, attorneys).
WOLFSON, J.S.C.

I
In a case of first impression, this court is being asked to resolve a two-fold question: (1) whether a plaintiff can recover damages for negligent infliction of emotional distress, based on the fear of developing acquired immune deficiency syndrome (AIDS); and (2) if so, whether such fear is unreasonable as a matter of law absent proof of actual exposure to the human immunodeficiency virus (HIV).
I conclude that a plaintiff may recover for emotional distress arising out of a fear of AIDS only where there exists proof of actual exposure to the AIDS virus and where a scientifically acknowledged channel of transmission has been articulated; but where there exists proof that a defendant's wrongful conduct was *188 either intentional or recklessly indifferent, a rebuttable presumption of exposure will arise, enabling plaintiff to survive a motion for summary judgment.
On or about September 15, 1989, Carmen De Milio was stuck in the forearm by a dental instrument while collecting trash from Dr. Philip Schrager's North Brunswick office. One of plaintiff's coworkers extracted the deeply embedded instrument from Mr. De Milio's arm and threw it into the "hopper" of their garbage truck. The State Department of Environmental Protection was thereafter notified and an investigation, conducted by the Division of Waste Management, ensued. The Division's investigation confirmed that the defendant had, in addition to dental probes and other instruments, sought to discard other categories of medical waste, including extracted teeth, blood stained gauze and towels, and bloody by-products. Consequently, Dr. Schrager was issued three separate violation notices[1] essentially charging him with improper disposal of medical waste.
In addition to the physical injury caused by the probe, plaintiff seeks compensation for the severe emotional stress allegedly caused by his fear of contracting AIDS in the future.

II
AIDS has become the recurrent theme fueling our worst nightmares.[2] The disease is known to be fatal in 100 percent of cases, *189 has no known cure, and is spreading at a horrifying rate, having "increased more than 100-fold since [it] was discovered in 1981." Marsha F. Goldsmith, "Critical Moment" at Hand in HIV/AIDS Pandemic, New Global Strategy to Arrest its Spread Proposed, 268 JAMA 445 (1992).
Individuals with AIDS are often subjected to severe social stigma. Consequently, it is not surprising that panic over the spread of HIV/AIDS in the United States has burgeoned into an influx of emotional distress claims based on the fear of contracting AIDS, (Stephanie B. Goldberg, AIDS Phobia: Reasonable Fears or Unreasonable Lawsuits?, A.B.A.J., June 1992, at 88), both by those who were actually exposed to the HIV virus, and those who were potentially or theoretically exposed. See Marriott v. Sedco Forex Int'l Resources, Ltd., 827 F. Supp. 59, 74-75 (D.Mass. 1993).
In the present case, although plaintiff could theoretically have contracted the virus by the puncture[3], he has, fortunately, repeatedly tested negative over a period now extending some five years.

*190 III
To state a cause of action in negligence, a plaintiff must allege that the defendant had a duty of care which it breached, and that the breach proximately caused legally cognizable injury. Caputzal v. The Lindsay Co., 48 N.J. 69, 222 A.2d 513 (1966). Applying this general analysis to cases involving negligent infliction of emotional distress, our Supreme Court has concluded: "[L]iability should depend on the defendant's foreseeing fright or shock severe enough to cause substantial injury in a person normally constituted, thus then bringing the plaintiff within the `zone of risk'." Id. at 76, 222 A.2d at 517 (quoting 2 F. Harper & F. James, The Law of Torts, § 18.4 at 1036 (1956)).[4]
The concept of legal duty emanates from the responsibility each person bears to exercise due care to avoid unreasonable risks of harm to others. Carter Lincoln-Mercury, Inc., Leasing Division v. EMAR Group, Inc., 135 N.J. 182, 194, 638 A.2d 1288, 1294 (1994). Generally, this would include a duty not to expose others to a disease.[5]See Hofmann v. Blackmon, 241 So.2d 752, 753 (Fla. Dist. Ct. App. 1970), cert. denied sub nom., Blackmon v. Hofmann, 245 So.2d 257 (Fla. 1971).
The question of whether a duty exists is one of fairness and policy that essentially "involves identifying, weighing, and balancing several factors  the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, *191 and the public interest in the proposed solution." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110, 1116 (1993).
If there is some probability of harm sufficiently serious that a reasonable person would take precautions to avoid it, then failure to do so is negligence. The test is not the balance of probabilities, but of the existence of some probability of sufficient magnitude to induce action to avoid it on the part of a reasonable mind.
In the instant case, Dr. Schrager's conscious decision to circumvent regulatory requirements regarding the disposal of medical waste materials is, of course, a critical factor.[6] These (and other) Department regulations were specifically designed to protect an identifiable class of persons who were reasonably and foreseeably at risk from an improper disposition of medical waste. Thus, they impose an affirmative duty upon defendant to protect persons such as plaintiff.[7]
In order to resolve whether defendant's tortious conduct proximately and reasonably caused plaintiff to develop a "fear-of-AIDS" syndrome, I must determine when the fear-of-AIDS becomes a *192 legally cognizable injury. In fear-of-AIDS cases, the proximate cause inquiry to date has focused upon whether the plaintiff's fear is reasonable, see, Faya v. Almaraz, 329 Md. 435, 620 A.2d 327, 337 (1993); Wetherill v. University of Chicago, 565 F. Supp. 1553, 1559 (N.D.Ill. 1983); Johnson v. West Virginia Univ. Hosps., Inc., 413 S.E.2d 889, 894 (W. Va. 1991), since a defendant will not be held liable where a plaintiff's fear is unreasonable.[8] Predictably, no consistent and reliable standard has evolved by which one can determine whether an individual's fear-of-AIDS is "reasonable." Sister jurisdictions are sharply divided on their approaches.
The decisions appear to fall within several broad categories: (1) where a channel of transmission exists, but no proof of exposure to the virus; (2) proof of exposure, but no scientifically recognized channel of transmission; and (3) proof of exposure to the virus and an acknowledged channel of transmission. See Vallery v. Southern Baptist Hospital, 630 So.2d 861, 866-67 (La. Ct. App. 1993) writ denied, 634 So.2d 860 (La. 1994); see, Gary J. Spahn & Timothy S. Baird, Closing the Floodgates on Fear of AIDS Claims, Vol. 37, No. 6 For The Defense 8, 9 (June, 1995).
Several courts have required plaintiff to prove actual exposure to the disease as a prerequisite to establishing the reasonableness of the fear, as a matter of law. For instance, in Burk v. Sage Products, Inc., 747 F. Supp. 285 (E.D.Pa. 1990), a paramedic pricked his finger on a needle protruding from a container used to dispose of used syringes. He brought an action against the manufacturer of the container for emotional damages based on his fear of contracting AIDS. The United States District Court granted summary judgment in favor of the defendant, precluding recovery as a matter of law, absent proof that the needle which had stuck his finger had actually been used on an AIDS patient. Id. at 288.
*193 Similarly, in Carroll v. Sisters of Saint Francis Health Services, Inc., 868 S.W.2d 585 (Tenn. 1993), the plaintiff had been pricked by a needle while visiting her sister in the hospital. The Supreme Court of Tennessee adopted the "actual exposure" approach as well, holding that "[i]n order to recover emotional damages based on the fear of contracting AIDS, the plaintiff must prove, at a minimum, that he or she was actually exposed to HIV." Id. at 594.
Likewise, in Funeral Services by Gregory, Inc., v. Bluefield Community Hospital, 186 W. Va. 424, 413 S.E.2d 79 (1991), the Supreme Court of Appeals denied recovery for a mortician who had embalmed an AIDS-infected corpse, where he had worn proper protective gear and had not alleged any avenue of exposure.[9] The court held that the fear of contracting AIDS, in absence of an actual exposure to the virus, is unreasonable, and would not be recognized as a legally compensable injury. Id. 413 S.E.2d at 84.[10] Employing the same rationale, the Minnesota Supreme Court reinstated a summary judgment in favor of a defendant health care provider, dismissing plaintiff's fear of AIDS claim, where an HIV-infected physician had worn gloves, precluding actual exposure to the virus. K.A.C. v. Benson, 527 N.W.2d 553 (Minn. 1995).
In Kerins v. Hartley, 27 Cal. App.4th 1062, 33 Cal. Rptr.2d 172 (Cal.Ct.App. 1994) (Kerins II), an intermediate court of appeal denied recovery to a patient who had been operated on by an *194 AIDS-infected doctor.[11] Relying on Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 25 Cal. Rptr.2d 550, 863 P.2d 795 (1993) (denying emotional distress recovery for fear of cancer unless developing the disease, after exposure, is probable), Kerins II held "emotional distress damages due to fear of AIDS [are] legally noncompensable unless the plaintiff alleges and proves actual exposure, and it is more probable than not that the plaintiff will actually develop the disease." Kerins II, 33 Cal. Rptr.2d at 174.
In sharp contrast, other courts willingly acknowledge the fear of AIDS as a compensable injury even absent proof of contact with an HIV transmitting medium (i.e., infected blood or semen). For example, in Castro v. New York Life Ins. Co., 588 N.Y.S.2d 695 (Sup.Ct. 1991), a cleaning worker was struck by a discarded hypodermic needle and syringe as she was attempting to empty a waste container. The trial court denied the defendant's motion for summary judgment, concluding that because the claim could be ".... tied to a distinct event which could cause a reasonable person to develop a fear of contracting a disease like AIDS, there is a guarantee of genuineness of the claim." Castro, supra, 588 N.Y.S.2d at 697.
Similarly, in Faya v. Almaraz, 329 Md. 435, 620 A.2d 327 (1993), the Maryland Court of Appeals held that two patients operated on by a surgeon with AIDS could recover for mental distress even though they were unable to prove actual exposure.
Finally, in Marchica v. Long Island R. Co., 31 F.3d 1197 (2d Cir.1994), cert. denied, sub nom., Long Island R. Co. v. Marchica, ___ U.S. ___, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995), an employee was stuck in the hand by a hypodermic needle lying hidden among *195 a pile of refuse. The employee brought an action under Federal Employers' Liability Act (FELA) to recover for fear of contracting AIDS. The Second Circuit held that the plaintiff could recover for the emotional distress caused by the fear of AIDS at least from the time of possible exposure to that point when plaintiff knew he was not exposed to HIV. Id. at 1207.
Other jurisdictions have relied upon existing "fear of cancer" cases as precedent in analyzing fear of AIDS cases.[12] New Jersey is among many jurisdictions which, under certain circumstances, allow recovery for emotional distress claims based upon fear of contracting a future disease such as cancer.[13] In Mauro v. Raymark Industries, Inc. 116 N.J. 126, 137, 561 A.2d 257, 263 (1989) for example, the Supreme Court confirmed the right of a plaintiff who has sustained physical injury because of exposure to toxic chemicals to recover damages for emotional distress[14] based upon "a reasonable concern that he or she has an enhanced risk of further disease."
*196 Our appellate courts have made it equally clear, however, that absent some "physical injury" resulting from exposure, emotional distress claims are non-compensable.[15]See e.g., Theer v. Philip Carey Co., 259 N.J. Super. 40, 50, 611 A.2d 148 (App.Div. 1992) (absent physical injury, there can be no recovery despite continual exposure to asbestos products); see, also, Ironbound Health Rights Advisory Commission v. Diamond Shamrock Chemicals Co., 243 N.J. Super. 170, 174-75, 578 A.2d 1248, 1250 (App.Div. 1990) (residents' exposure to toxic chemicals without accompanying physical injury could not state a claim for emotional distress damages); see also, Devlin v. Johns-Manville Corp., 202 N.J. Super. 556, 560-563, 570, 495 A.2d 495, 497-499, 503 (Law Div. 1985) (allowing recovery for emotional distress from asbestosis resulting from asbestos exposure).
While our courts have been guided by public policy considerations when viewing a cause of action for emotional distress, it is also clear that "the outer-most boundaries of the law dealing with emotional distress damages are not yet visible." Gautam v. De Luca, 215 N.J. Super. 388, 400, 521 A.2d 1343, 1349 (App.Div.), certif. denied, 109 N.J. 39, 532 A.2d 1107 (1987). However, absent physical injury, damages have been allowed where the claimed emotional distress is "severe and substantial". Frame v. Kothari, 115 N.J. 638, 642, 560 A.2d 675, 677 (1989) (family members witnessing physician's malpractice and observing injurious effects on patient may give rise to damages for emotional distress); Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 367-368, 544 A.2d 857, 864 (1988) (even where infliction of emotional distress is intentional, recovery precluded unless emotional distress is severe); Strachan v. John F. Kennedy Memorial Hosp., 109 N.J. 523, 534, 538 A.2d 346, 351 (1988) (delay in removing brain-dead *197 person from life support system resulted in "compelling evidence of distress" to next-of-kin); Portee v. Jaffee, 84 N.J. 88, 101, 417 A.2d 521, 528 (1980) (plaintiff mother, observing her son die while trapped in elevator, and thereafter becoming severely depressed and suicidal); Restatement (Second) of Torts, § 436A, comment c at 462 (1965) (negligent infliction of emotional distress without resultant bodily harm not actionable unless emotional claims of such severity and duration as to be tantamount to bodily harm); Prosser and Keeton on Torts, § 54 at 362 (5th ed. 1984) (mental disturbance without physical injury actionable where there is a likelihood of genuine and serious mental distress arising from special circumstances; this serves as guarantee that claim is not spurious). See also, Kohn v. Schiappa, 281 N.J. Super. 235, 241-42, 656 A.2d 1322, 1325 (Law Div. 1995), (claim for emotional distress recognized in a legal malpractice action against attorneys retained for non-economic purposes as necessary to protect the public interest).
Despite the varying rationales which have been embraced, it is apparent that recovery for severe emotional distress, even when "tantamount" to physical harm, would, in the ordinary case be precluded as a matter of law, absent a showing that a plaintiff was actually exposed to a toxic agent, such as asbestos, or, in this case, HIV.[16]

*198 IV
In the case at hand however, defendant engaged in "conduct which activated legal obligations" to the plaintiff. Compare, Anderson v. Somberg, 67 N.J. 291, 298, 338 A.2d 1, 4 (1975). Specifically, Dr. Schrager circumvented numerous regulations designed and intended to protect persons, such as this plaintiff, from the very harm which here occurred. Moreover, the emotional distress that Mr. De Milio allegedly suffered can be directly "tied to a distinct event." Castro v. New York Life Ins. Co., supra, 588 N.Y.S.2d at 697. Given this context, principles of fairness and equity mandate that Dr. Schrager be held accountable for his default. It would be the antithesis of justice to deny the full range of recovery to an innocent plaintiff who has been physically injured in the circumstances of this case.
Where a plaintiff has established a prima facie case of wrongdoing by a defendant, New Jersey courts have, in a limited variety of contexts, afforded plaintiffs a presumption of liability, thereby shifting the burden of going forward to the defendant to rebut the presumption. See e.g., Andersen v. Exxon Company, U.S.A., 89 N.J. 483, 446 A.2d 486 (1982) (after prima facie case established in Law Against Discrimination [LAD] case, burden of going forward shifted to defendant to rebut presumption of liability by articulating a legitimate nondiscriminatory reason for conduct); Goodman v. London Metals Exchange Inc., 86 N.J. 19, 31, 429 A.2d 341, 347 (1981) (burden of going forward shifted in LAD case).
Indeed, our courts have historically utilized this procedural device in order to protect persons injured by the wrongful acts of others when the equities weighed heavily in plaintiff's favor, and where to do otherwise would deprive an injured plaintiff of a complete remedy. Fosgate v. Corona, 66 N.J. 268, 330 A.2d 355 (1974) (shifting burden to defendant-physician in preexisting injury, malpractice case because physician is in better position than plaintiff to separate harm caused by the malpractice from the preexisting condition); Thornton v. General Motors Corp., 280 *199 N.J. Super. 295, 300-03, 655 A.2d 107 (Law Div. 1994) (where plaintiff is without fault, burden of apportionment in a crashworthy/enhanced injury case shifted to defendant); NOPCO Chemical Div. v. Blaw-Knox Company, 59 N.J. 274, 281 A.2d 793 (1971) (shifting burden to defendants to establish which party in the transportation bailment chain caused damage to plaintiff's commercial drying machine); Griggs v. Bertram, 88 N.J. 347, 367-68, 443 A.2d 163, 173 (1982) (burden of persuasion shifted to disclaiming insurance carrier to establish unreasonableness of settlement, where insured establishes prima facie case that settlement was reasonable in amount and entered in good faith); and see, Pagano v. United Jersey Bank, 276 N.J. Super. 489, 648 A.2d 269 (App.Div. 1994) (shifting burden of going forward to a debtor to prove affirmative defense of payment when a creditor had possession of an uncancelled instrument of obligation); cf. Anderson v. Somberg, 67 N.J. 291, 338 A.2d 1 (1975).[17]
So too, in the instant case, public policy and the weight of the equities compel a like analysis and confirm the propriety of a similar procedural framework.
Such a shift in the burden of going forward should not be taken as an abrogation of the plaintiff's responsibility to satisfy his burden of proof on the ultimate issues of causation or damage. Indeed, in an ordinary case, the law will not assist an innocent plaintiff at the expense of a relatively innocent defendant, or relieve a plaintiff from his usual burden of proving each of the elements of his claim. See, Anderson v. Somberg, supra, 67 N.J. at 298, 338 A.2d 1. However, where defendant's conduct goes *200 beyond mere negligence, and instead, reflects an intentional, or, at least a recklessly indifferent mindset, the more equitable approach is to presume actual exposure, and shift to the defendant the burden of rebutting the presumption, a task which can be achieved by proving the lack of actual exposure, or by undermining the factual and objective reasonableness of plaintiff's claimed severe emotional distress.
To prevail at trial, a plaintiff must make a prima facie showing to a reasonable degree of medical probability (based upon expert medical testimony) that a "distinct event" from which the virus could have been transmitted, had occurred.[18] In addition, even where a defendant has engaged in wrongful conduct, such as the circumvention of DEPE regulations designed to prevent the very harm that occurred, the plaintiff must still convince the finder of fact that his fear is objectively reasonable, and that his emotional distress is sufficiently severe so as to be tantamount to a "physical injury". See, Ironbound Health Rights Advisory Commission, supra, 243 N.J. Super. at 174-75, 578 A.2d 1248. Thus, the ultimate burden of proof remains, at all times, with the plaintiff to establish the reasonableness of his claims, a result entirely consistent with precedent. While the jury will likely be asked to consider plaintiff's inability to prove exposure as affecting the objective reasonableness of the alleged emotional distress, given the presumption to be afforded plaintiff, the absence of such proof would not itself entitle defendant to judgment at the end of plaintiff's case. See, R. 4:40-1. Rather, the burden of going forward would be shifted to Dr. Schrager to rebut the presumption and to offer proofs directed at plaintiff's failure to carry his *201 burden of proving the objective reasonableness of his claimed emotional distress.[19]
If plaintiff succeeds in carrying his ultimate burden of proof and prevails on the issue of liability, any recovery would be limited to the period comprising the plaintiff's reasonable window of anxiety[20]  the period from the time of possible exposure to that point when plaintiff knew or should reasonably have known that he was not infected with HIV, after which any continuing distress must be deemed to be unreasonable as a matter of law, and thus, not compensable.

V
To survive a motion for summary judgment, a plaintiff seeking to recover for emotional distress arising out of a fear of AIDS will ordinarily be required to allege not only actual exposure to the HIV virus, but the existence of a scientifically acceptable channel of transmission as well. A failure of proof as to either element will preclude recovery as a matter of law.
However, given the procedural framework applicable because of the defendant's wrongful conduct in this case, the presumption of exposure being afforded to the plaintiff, and viewing the facts alleged in a light most favorable to plaintiff, I cannot reject plaintiff's fear of AIDS claim as a matter of law, despite his apparent inability to prove actual exposure to the virus. Accordingly, and for the reasons articulated above, the defendant's motion for summary judgment is denied.
Plaintiff shall submit an appropriate form of order.
NOTES
[1] N.J.A.C. 7:26-3A.14, (labeling requirements); N.J.A.C. 7:26-3A.15, (marking requirements); and N.J.A.C. 7:26-3A.19 (failure to use medical waste tracking forms properly). The Division's inspection report concluded that Dr. Schrager had not properly disposed of medical waste.
[2] Central to an understanding of this case are several well-established and scientifically understood facts about AIDS and its transmission. AIDS is the disease that results when opportunistic infection preys on a bodily immune system that has been weakened by HIV. Faya v. Almaraz, 329 Md. 435, 620 A.2d 327, 331 (1993). The overwhelming consensus of medical opinion is clear: the HIV virus is not spread casually. Rather, it has specific and well-known modes of transmission through sexual contact, exposure to infected blood, or blood components, and perinatally from mother to infant. See Jonathan N. Weber & Robin A. Weiss, HIV Infection: The Cellular Picture, Scientific American, October 1988, at 100-109. Further, according to the Centers for Disease Control, at or about the time of plaintiff's injury there was credible evidence of a 95% certainty that one will test positive for the AIDS virus, if at all, within six months after exposure to it. U.S. Department of Health and Human Services, Voluntary HIV Counseling and Testing: Facts, Issues, and Answers, 1991.
[3] The risk of contracting HIV from a single needle-stick exposure to HIV-infected blood is approximately 0.3-0.5% (ranging between three in 1000 to five in 1000), which is considered by the scientific community to be a very low probability of infection. Mandana Shahvari, Afraid: Fear of Aids as a Cause of Action, 67 Temp.L.Rev. 769 (1994). The risk of HIV exposure and contraction from a single needle-stick where the needle cannot be traced to its previous user is necessarily less than 0.3 to 0.5%, but the statistical risk cannot be mathematically documented. Id. at 799. Attempts to calculate the overall risk are complicated by "variability in the infectivity of the previous source, in the type and severity of injuries sustained, and with the type of needle or instrument causing the injury." Ibid.
[4] Where a fear of contracting AIDS has been alleged, for example, plaintiff must prove that the defendant's breach of that duty proximately and reasonably caused the plaintiff's fear of AIDS. See, e.g., Castro v. New York Life Ins. Co., 153 Misc.2d 1, 588 N.Y.S.2d 695, 697 (Sup.Ct. 1991).
[5] Moreover, because AIDS is both incurable and fatal, commentators have suggested that public policy considerations alone justify the imposition of such a duty in order to reduce its spread. Terry C. Gay & Paige F. Rosato, Combatting Fear of Future Injury and Medical Monitoring Claims, 61 Def.Couns.J. 554, 557 (1994).
[6] Although the violation of a regulatory duty of care is not necessarily conclusive on the issue of negligence, it is plainly a circumstance which the jury would be entitled to consider in assessing liability. See Waterson v. General Motors, 111 N.J. 238, 263, 544 A.2d 357, 370 (1988); Horbal v. McNeil, 66 N.J. 99, 103, 328 A.2d 604, 606 (1974).
[7] This is so even though the medical literature indicates that the risk of HIV transmission by a used and discarded dental instrument is extremely low. Shahvari, supra, note 3. "Legal scholars have long agreed that the seriousness of potential harm, as well as its probability, contributes to a duty to prevent it." Faya v. Almaraz, supra, 620 A.2d at 333; Restatement, Second, Torts, § 293(c), comment c; Prosser and Keeton, Torts, § 31 (5th ed. 1984); Moran v. Faberge, 273 Md. 538, 332 A.2d 11, 15 (1975) ("Whether unreasonable risk exists in a given situation depends on balancing the probability and seriousness of harm, if care is not exercised, against the costs of taking appropriate cautions."). While it may be unlikely that a used and discarded dental instrument will transmit the AIDS virus to a sanitation worker who comes in contact with such waste, the worker will almost surely die if the virus is transmitted. See Faya v. Almaraz, supra, 620 A.2d at 333.
[8] But see, Seimon v. Dickinson & Co., 91 Ohio App.3d 323, 632 N.E.2d 603 (1993) (proof of actual exposure to HIV necessary to establish proximate cause in negligence action for fear of AIDS).
[9] But see, Courtney v. Courtney, 190 W. Va. 126, 437 S.E.2d 436, 443 (1993) (overruling, Funeral Services By Gregory, Inc. v. Bluefield Community Hospital, supra, based upon applicable statute of limitations).
[10] Accord, Lubowitz v. Albert Einstein Medical Ctr., 424 Pa.Super. 468, 623 A.2d 3, 5 (Pa. Super. Ct. 1993); Ordway v. County of Suffolk, 154 Misc.2d 269, 583 N.Y.S.2d 1014, 1016-17 (Sup.Ct. 1992); Johnson v. West Virginia Univ. Hosp., Inc., 186 W. Va. 648, 413 S.E.2d 889, 893 (1991); Hare v. State, 173 A.D.2d 523, 570 N.Y.S.2d 125, 127 (1991); Doe v. Doe, 136 Misc.2d 1015, 519 N.Y.S.2d 595, 598-600 (Sup.Ct. 1987); Neal v. Neal, 125 Idaho 617, 873 P.2d 871, 879 (1994); Doe v. Surgicare of Joliet, Inc., 268 Ill. App.3d 793, 205 Ill.Dec. 593, 596-97, 643 N.E.2d 1200, 1203-04 (1994).
[11] In its initial decision, that intermediate appellate court had held that Ms. Kerins' fear of AIDS could be reasonable and thus compensable, even absent proof of exposure to, or infection with, HIV/AIDS. Kerins v. Hartley, 21 Cal. Rptr.2d 621 (Cal.Ct.App. 1993) (Kerins I). The eventual decision cited above, (Kerins II), evolved after the California Supreme Court granted certiorari, vacated the appellate court's initial decision, and directed reconsideration in light of Potter, supra.
[12] Their latent manifestation and deadly, incurable nature, have led these courts to "analyze fear of AIDS cases by the same standards as actions for developing cancer." Brian R. Garves, Fear of AIDS, 3 J. Pharmacy & L. 29, 30 (1994). The fear of cancer, as opposed to "cancerphobia," a term generally used to describe a present anxiety over developing cancer in the future, or the fear of contracting other types of serious physical illness, has been characterized as a branch of the traditional theory of recovery for emotional distress damages. Gay & Rosato, supra, 61 Def.Couns.J. at 554.
[13] The policy considerations underlying the decisions in the fear of cancer cases are not entirely applicable to a fear of AIDS case, due in part, to the less speculative nature of the disease. Even years after exposure to a known carcinogen, an individual cannot know with any degree of certainty whether he or she will ever contract cancer. Thus, the fear may reasonably last a lifetime, fueling concerns about opening the "floodgates of litigation."

In contrast, scientific tests are currently available which can reliably determine whether or not the HIV virus is present within four to six weeks of exposure to HIV. Shahvari, supra, 67 Temp.L.Rev. at 769.
[14] Compare, Ayers v. Jackson Tp., 106 N.J. 557, 525 A.2d 287 (1987), where the Supreme Court declined, in a Tort Claims Act context, to allow recovery for emotional distress even when "physical injury" was present.
[15] The Supreme Court has specifically declined to reach the question "whether exposure to toxic chemicals without physical injury would sustain a claim for emotional distress damages based upon a reasonable fear of future disease". See, Mauro, supra, 116 N.J. at 137, 561 A.2d 257. (emphasis supplied).
[16] It has been suggested that dispensing with a requirement of actual exposure would necessarily result in a proliferation of claims at a "tremendous societal cost" which would place "an undue burden on the health care field." Potter v. Firestone Tire and Rubber Co., supra, 25 Cal. Rptr.2d at 567.

Other courts have expressed concern that juries would likely reach inconsistent results, discouraging early resolution or settlement, unless actual exposure is required. Kerins II, supra, 33 Cal. Rptr.2d at 179; Carroll v. Sisters of Saint Francis Health Services, Inc., supra, 868 S.W.2d at 593, n. 17; Vallery v. Southern Baptist Hospital, supra, 630 So.2d at 867.
Indeed, were the rule otherwise, one could readily envision fear of AIDS claims being raised for every blood transfusion, accidental needle puncture, or matrimonial (or other) sexual infidelity, perhaps compromising the availability and affordability of liability insurance for toxic liability risks.
[17] Since the defendants in Anderson had each engaged in conduct which activated legal obligations to plaintiff, failure of any defendant to prove his nonculpability would trigger liability, thus shifting the ultimate burden of proof to the defendant, Id. at 298, 338 A.2d 1, a "sharply limited exception to the traditional rule that plaintiff carry the entire burden of proof in establishing liability." Shackil v. Lederle Laboratories, A Division of American Cyanamid Co., 116 N.J. 155, 173, 561 A.2d 511 (1989).
[18] See, Castro v. New York Life Ins. Co., supra, 588 N.Y.S.2d at 697. Although the scientific community appears unanimous in quantifying the risk of transmission in a needle prick case to be very slight, see notes 3 and 7, supra, there is no dispute that an acknowledged channel of transmission existed when the probe became embedded in De Milio's arm.
[19] Cf., Petri v. Bank of New York Co., 153 Misc.2d 426, 582 N.Y.S.2d 608 (Sup.Ct. 1992) (plaintiff's inability to establish reasonable, non-speculative basis for his fear of AIDS defeated his claim, despite actual exposure).
[20] The "window of anxiety" period was first described by the Maryland court in Faya v. Almaraz, 620 A.2d 327 (Md. 1993); see also, Marchica v. Long Island R.R., supra, 31 F.3d at 1207 (recovery for emotional distress caused by fear of AIDS authorized "from the time of possible exposure to that point when plaintiff knew he was not exposed to HIV").