**Patrick PENDERGIST, Appellant,**

v.

**Kelly B. PENDERGRASS, M.D., et al., Health Midwest, Prime Health, KC, Inc., Solomon Lewitton, M.D., Respondents.**

No. WD 54315.

Missouri Court of Appeals,
Western District.

Feb. 10, 1998.

H. Kent Desselle, Independence, for appellant.

Timothy M. Aylward, Blackwell, Sanders, Matheny, Weary & Lombardi, LLP, Kansas City, for Respondent Pendergrass.

Roger Paul Wright, Theodore M. Green, Shughart, Thomson & Kilroy, P.C., Kansas City, for Respondent Health Midwest, Inc.

Kenneth J. Reilly, Kelley D. Sears, Shook, Hardy & Bacon, L.L.P., Kansas City, for Respondent Prime Health.

Michael P. Oliver, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Kansas City, for Respondent Lewitton.

Before ULRICH, C.J., P.J., and ELLIS and HOWARD, JJ.,

ULRICH, Chief Judge, Presiding Judge.

Patrick Pendergist appeals the trial court's order granting the motions for summary judgment filed by the defendants, Kelly B. Pendergrass, M.D., Prime Health, Kansas City, Inc., Health Midwest, Inc. d/b/a Research Medical Center, Humana, Inc. d/b/a Humana Health Care Plans, and Soloman Lewitton, M.D. (collectively "Defendants"). Despite having tested negative for the Human Immunodeficiency Virus (HIV) four times in four years, Mr. Pendergist sued Defendants for negligent infliction of emotional distress and fraudulent misrepresentation premised upon his fear of contracting Acquired Immunodeficiency Syndrome (AIDS) or hepatitis B, another communicable blood disease, as a result of receiving human whole blood Factor VIII rather than Recombinant Factor VIII, which he claimed to have requested, during his hernia surgery in 1993. The question presented is whether a plaintiff may recover damages for emotional distress based on a fear of contracting AIDS or hepatitis B absent proof of actual exposure to HIV. The judgment of the trial court is affirmed.

## FACTS

Patrick Pendergist is 48 years old. At the age of seven, he was diagnosed with hemophilia, a condition of the circulatory system characterized by delayed clotting of the blood and difficulty in controlling hemorrhage. Mr. Pendergist saw his physician on June 9, 1993, and complained of a lump in the right groin region. Mr. Pendergist's physician diagnosed the injury, the apparent result of an automobile accident, as a hernia, and Mr. Pendergist elected to have the hernia surgically repaired.

Mr. Pendergist had previously undergone bone spur and ganglion surgery. On both occasions, he received human whole blood Factor VIII. Factor VIII is a clotting agent that prevents excessive bleeding. Despite having received human whole blood Factor VIII during two prior surgeries, Mr. Pendergist claimed that before his hernia surgery in 1993, he specifically told all of the treating medical professionals that he wanted "synthetic" Factor VIII, i.e., Recombinant Factor VIII, rather than human whole blood Factor VIII. He requested Recombinant Factor VIII because he believed that it was (1) safer than human whole blood Factor VIII and (2) incapable of transmitting life-threatening diseases. Mr. Pendergist conceded, however, that none of the health care providers told him he would receive Recombinant Factor VIII.

Human whole blood Factor VIII is generally prepared from large plasma pools obtained from thousands of donors, and without adequate inactivation of viruses, it can transmit HIV and hepatitis B. Consequently, human whole blood Factor VIII is treated with a solvent and a detergent to eliminate the HIV and hepatitis B viruses. Since the virus-sterilization process was introduced in 1985, many thousands of patients have received more than seven million doses of blood products, including human whole blood Factor VIII, without transmission of HIV or hepatitis B infections. Recombinant Factor VIII, however, is derived from introduction of Factor VIII genes into Chinese hamster cells. Because human albumin, a protein, is added as a stabilizer, a purification process utilizing affinity and ion exchange chromatography is necessary.

Mr. Pendergist experienced successful hernia surgery at Research Medical Center in Kansas City on July 2, 1993. Human whole blood Factor VIII was administered to Mr. Pendergist during the surgery. Upon learning after the surgery that he received human whole blood Factor VIII, Mr. Pendergist claims that he began to feel angry, frustrated, and helpless. He claims that he became distrustful and paranoid, experienced bizarre

dreams, and grew concerned about contracting AIDS or hepatitis B.

AIDS is the most severe manifestation of infection with Human Immunodeficiency Virus (HIV). **Centers for Disease Control and Prevention (CDC) National AIDS Clearinghouse: Information on HIV/AIDS (last modified March 1997)** <http://www.cdcnac.org>. The CDC lists numerous opportunistic infections and cancers that, in the presence of HIV infection, constitute AIDS diagnosis. *Id.* Persons infected with "full-blown AIDS" frequently suffer from infections of the lungs, brain, eyes, and other organs and from debilitating weight loss, diarrhea, and a type of cancer called Kaposi's Sarcoma. *Id.*

HIV is a retrovirus that attacks the human immune system. *Faya v. Almaraz*, 329 Md. 435, 620 A.2d 327, 329 (Md.1993). The virus invades host cells, notably certain lymphocytes, replicates itself, weakens the immune system, and ultimately destroys the body's capacity to ward off disease. *Id.* The HIV virus is not spread casually. The fluids that can transmit the virus are blood, semen, vaginal fluids, and breast milk, and the virus is only transmitted if fluid from the carrier is introduced into the bloodstream of another individual. *Id.* (citing U.S. Dept. of Health and Human Servs., Surgeon General's Report on Acquired Immune Deficiency Syndrome 16 (1987)). Thus, the typical modes of transmission of HIV include sexual contact, exposure to infected blood or blood components, and perinatally from mother to infant. *DeMilio v. Schrager*, 285 N.J.Super. 183, 666 A.2d 627, 630 n. 2 (N.J.Super.Ct. Law Div. 1995). The presence of HIV is detected by a laboratory blood test for antibodies to the virus. Although there is often a long latency period between infection with HIV and the onset of AIDS, enzyme immunoassay tests are considered to be 99% accurate three months after exposure. *Brown v. New York City Health and Hosp. Corp.*, 225 A.D.2d 36, 648 N.Y.S.2d 880, 885 (N.Y.App.Div.1996). Ninety-five percent of HIV-infected individuals test positive for the virus within six months of exposure. *Id.* An individual who tests negative for HIV antibodies more than six months after a potential exposure is,

therefore, unlikely to become infected with the virus as a result of that exposure. *Id.*

In November 1993, Mr. Pendergist underwent an enzyme immunoassay test to determine whether he had been exposed to the HIV virus, and the test was negative. He was tested again for HIV and hepatitis in the summers of 1994, 1995, and 1996 with negative results.

Mr. Pendergist filed his petition for damages against Defendants on June 27, 1995. He sought over $5.2 million in damages for his claimed emotional injuries under two theories: negligent infliction of emotional distress and fraudulent misrepresentation. Defendants filed separate motions for summary judgment arguing that without evidence of actual exposure to the HIV or hepatitis virus as a result of his having received human whole blood Factor VIII during hernia surgery in 1993, Mr. Pendergist's claim for emotional distress damages based on a fear of contracting AIDS failed as a matter of law. The trial court found that absent actual exposure to the HIV or hepatitis virus, Mr. Pendergist's claimed emotional distress based on the fear of contracting AIDS or hepatitis was unreasonable and granted Defendant's motions. This appeal followed.

## RECOVERY FOR EMOTIONAL DISTRESS FOR FEAR OF CONTRACTING AIDS

In his sole point on appeal, Mr. Pendergist claims that the trial court erred in granting Defendants' motions for summary judgment. He contends that proof of actual exposure to the HIV or hepatitis B virus is not necessary as a matter of law for recovery of emotional distress damages.

Appellate review of the grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.*

Summary judgment will be upheld on appeal if the movant is entitled to judg-

ment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* at 376. A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action, (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

■ Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.; Reeves v. Keesler,* 921 S.W.2d 16, 19 (Mo.App.1996).

■ The general elements of a negligence action are (1) a legal duty of the defendant to protect the plaintiff from injury, (2) breach of the duty, (3) proximate cause, and (4) injury to the plaintiff. *Stark v. Lehndorff Traders Venture,* 939 S.W.2d 43, 45 (Mo.App.1997). To recover damages for emotional distress, a plaintiff must show that (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant. *Bass v. Nooney Co.,* 646 S.W.2d 765, 772 (Mo. banc 1983). A showing of a contemporaneous traumatic physical injury is no longer necessary. *Id.* (where old impact rule was abandoned). The elements of fraudulent misrepresentation are: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's

knowledge of its falsity or his ignorance of the truth, (5) the speaker's intent that his representation should be acted upon by the hearer in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the truth of the representation, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximately caused injury. *Slone v. Purina Mills, Inc.,* 927 S.W.2d 358, 371 (Mo.App.1996). Both the claims of negligent infliction of emotional distress and fraudulent misrepresentation require a showing of injury to the plaintiff.

In their motions for summary judgment and supporting memoranda, Defendants asserted that without actual exposure to the HIV virus, Mr. Pendergist's fear of contracting AIDS was unreasonable and did not constitute a legally compensable injury. Defendants argued that because Mr. Pendergist was unable to produce evidence that he was actually exposed to the HIV or hepatitis B virus, specifically, that the human whole blood Factor VIII he received during the 1993 hernia operation was contaminated with the HIV or hepatitis B virus, they were entitled to judgment as a matter of law.

In response to Defendants' motions, Mr. Pendergist contended that he was not required as a matter of law to offer proof of actual exposure to the HIV or hepatitis B virus to recover damages for emotional distress based on the fear of contracting the diseases. Instead, he argued, a reasonableness standard applied. That is, he needed only to show that his fear of contracting AIDS or hepatitis B as a result of receiving human whole blood Factor VIII instead of Recombinant Factor VIII was reasonable. In an attempt to make such a showing, Mr. Pendergist produced a warning label that was affixed to the human whole blood Factor VIII product that he received during his hernia operation. The warning label read, "WARN ING: This product is prepared from large pools of human plasma which may contain the causative agents of hepatitis and other viral diseases. See package insert WARNINGS." He argued that "there was exposure to blood products which have the potential of containing the HIV virus."

Thus, he contended, his fear of contracting the HIV or hepatitis B virus was reasonable in light of the *possible* exposure to the viruses.

This is an issue of first impression in Missouri. Review of cases from other jurisdictions is, therefore, helpful. The majority of jurisdictions that have considered claims for infliction of emotional distress based on a fear of contracting AIDS have determined that actual exposure to the virus is a necessary requirement for the claim. This determination has been decided under two approaches. First, some courts have expressly identified "actual exposure" as a required element of a fear of contracting AIDS claim. *See Kerins v. Hartley,* 27 Cal.App.4th 1062, 33 Cal.Rptr.2d 172 (Cal.Ct.App.1994); *Brzoska v. Olson,* 668 A.2d 1355 (Del.1995); *Neal v. Neal,* 125 Idaho 627, 873 P.2d 881 (Idaho.Ct.App.1993); *Doe v. Surgicare of Joliet, Inc.,* 268 Ill.App.3d 793, 205 Ill.Dec. 593, 643 N.E.2d 1200 (Ill.App.Ct.1994); *K.A.C. v. Benson,* 527 N.W.2d 553 (Minn.1995); *DeMilio v. Schrager,* 285 N.J.Super. 183, 666 A.2d 627 (N.J.Super.Ct. Law Div.1995); *Brown v. New York City Health and Hosp. Corp.,* 225 A.D.2d 36, 648 N.Y.S.2d 880 (N.Y.App.Div. 1996); *Seimon v. Becton Dickinson & Co.,* 91 Ohio App.3d 323, 632 N.E.2d 603 (Ohio Ct. App.1993); *Burk v. Sage Products, Inc.,* 747 F.Supp. 285 (E.D.Pa.1990); *Bain v. Wells,* 936 S.W.2d 618 (Tenn.1997); *Carroll v. Sisters of Saint Francis,* 868 S.W.2d 585 (Tenn. 1993); *Babich v. Waukesha Memorial Hosp., Inc.,* 205 Wis.2d 698, 556 N.W.2d 144 (Wis. Ct.App.1996).

An example of this approach is *Brown v. New York City Health and Hosp. Corp.,* 225 A.D.2d 36, 648 N.Y.S.2d 880 (N.Y.App.Div. 1996). In *Brown,* a nurse was stuck by a needle left in the crib of an HIV-infected baby. The nurse sued the hospital and doctors for negligent infliction of emotional distress based on the fear of contracting AIDS. In consider ing the elements of a cause of action to recover damages for emotional distress caused by the fear of contracting AIDS, the Supreme Court, Appellate Division of New York, discussed the medical facts about the disease and its transmission and general elements for a claim of negligent infliction of emotional distress. *Id.* 648 N.Y.S.2d at 884–885. The court explained that to maintain a cause of action for damages due to the fear of contracting AIDS, the plaintiff had to establish that her fear was a reasonable result of the defendants' wrongful conduct. *Id.* at 886. It then concluded that a plaintiff who has not tested positive for HIV[1] must offer proof of "actual exposure" to HIV, that is, proof of both a scientifically accepted method of transmission of the virus and that the source of the allegedly transmitted blood or fluid was HIV-positive, to recover under damages for the fear. *Id.* The court reasoned, "Requiring proof of actual exposure in this manner will, we believe, insure that there is a genuine basis for the plaintiff's fear of developing the disease, that the fear is not based on public misconceptions about the disease, and that such claims are treated consistently." *Id.* Because the plaintiff presented evidence that HIV was present (the infected infant) and that there was a scientifically accepted channel of transmission (a needle puncture), the court held that she had established triable issues of fact as to whether a breach of duty by the defendants reasonably caused her to fear contracting AIDS. *Id.* at 888.

Other courts have found, for a different reason, that actual exposure to the HIV virus is a necessary element to claim emotional distress based on a fear of contracting AIDS. These courts have held that absent actual exposure, the fear of contracting AIDS is unreasonable. *See Russaw v. Martin,* 221 Ga.App. 683, 472 S.E.2d 508 (Ga.App.1996); *Vallery v. Southern Baptist Hosp.,* 630 So.2d 861 (La.Ct.App.1993); *Drury v. Baptist Memorial Hosp. Sys.,* 933 S.W.2d 668 (Tex.App. 1996); *Funeral Servs. By Gregory v. Bluefield Community Hosp.,* 186 W.Va. 424, 413 S.E.2d 79 (W.Va.1991), *overruled on unrelated grounds, Courtney v. Courtney,* 190 W.Va. 126, 437 S.E.2d 436 (W.Va.1993). An example of this approach is enunciated in *Russaw v. Martin,* 221 Ga.App. 683, 472 S.E.2d 508 (Ga.App.1996). In *Russaw,* an individual

1. The court concluded that a positive HIV-antibody test was, of course, sufficient prima facie proof that a plaintiff's fear of developing AIDS was reasonable. *Id.* 648 N.Y.S.2d at 886.

who was stuck by a unsterile needle which fell from a nurse's pocket sued the nurse and hospital where the incident occurred for negligence, battery, and reckless conduct. She offered no evidence that the needle was contaminated with HIV or hepatitis or that she had contracted HIV or AIDS. The Georgia Court of Appeals held that to allow recovery for emotional injuries and mental anguish, without any proof of actual exposure to HIV or hepatitis is *per se* unreasonable. *Id.* 472 S.E.2d at 512. The court explained, "Because the statistical probability of contracting HIV from a non-HIV contaminated needle is zero, it cannot be said that in the absence of evidence of actual exposure and a channel of communication, that any purported damages naturally flow from the injury." *Id.* (citation omitted). Because the plaintiff offered no evidence of actual exposure to HIV or hepatitis, the court found that her mental anguish claim was unreasonable. *Id.*

A minority of jurisdictions, however, have applied a more lenient approach. Those jurisdictions generally require only that the plaintiff's fear be reasonable. *See Marchica v. Long Island R.R. Co.*, 31 F.3d 1197 (2nd Cir.1994); *cert. denied,* 513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995); *Faya v. Almaraz,* 329 Md. 435, 620 A.2d 327 (Md. 1993); *Castro v. New York Life Ins. Co.,* 153 Misc.2d 1, 588 N.Y.S.2d 695 (N.Y.Sup.Ct. 1991). Proof of a possible exposure to the HIV virus has proven sufficient to show that a plaintiff's fear of contracting AIDS is reasonable. *Id.* This view is illustrated by the case, *Castro v. New York Life Ins. Co.,* 153 Misc.2d 1, 588 N.Y.S.2d 695 (N.Y.Sup.Ct. 1991). In *Castro,* a cleaning worker was stuck by a discarded needle in a waste container in an insurance company's office where blood from life insurance applicants was drawn. Although the plaintiff offered no evidence of HIV infection or that the needle was contaminated by the HIV virus, the Supreme Court, New York County, concluded that a reasonable person exposed to information about AIDS could develop a fear of contracting AIDS under those circumstances. *Id.* 588 N.Y.S.2d at 698.

In a similar case, *Faya v. Almaraz,* 329 Md. 435, 620 A.2d 327 (Md.1993), two patients who were operated on by a surgeon infected with AIDS sued the surgeon and the hospital for emotional distress damages. The Maryland Court of Appeals reversed the trial court's dismissal of the claims based on lack of proof of actual exposure stating,

> [W]e cannot say that appellants' alleged fear of acquiring AIDS was initially unreasonable as a matter of law, even though the averments of the complaints did not identify any actual channel of transmission of the AIDS virus. But [a] requirement that plaintiffs must allege actual transmission would unfairly punish them for lacking the requisite information to do so.

*Id.* 620 A.2d at 336–337. Most of these cases, however, allow recovery for emotional distress only for the period of time between the possible exposure and the time the plaintiff knew, or had reason to know, that he had not in fact become infected with the disease. *See Marchica,* 31 F.3d at 1207; *Faya,* 620 A.2d at 337.

 In Missouri, general tort principles and public policy concerns dictate the adoption of an actual exposure rule in fear of AIDS cases. As previously articulated, a plaintiff may recover damages for emotional distress if (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant.[2] *Bass v. Nooney Co.*, 646 S.W.2d 765, 772 (Mo. banc 1983). A showing of a contemporaneous traumatic physical injury is no longer necessary. *Id.* The first part of the test, that the defendant should have realized his conduct involved an unreasonable risk of causing the distress, essentially requires that the fear or distress experienced by the plaintiff be a reasonable consequence of the defendant's conduct. *See Barrett v. Danbury Hosp.,* 232 Conn. 242, 654 A.2d 748 (Conn. 1995)(where Supreme Court of Connecticut

---

**2.** This opinion does not consider whether Mr. Pendergist has satisfied the second part of the *Bass* test.

applies its similar test for recovery for infliction of emotional distress to a fear of AIDS case). If fear is an unreasonable consequence of defendant's conduct, the defendant can not be expected to recognize that its conduct could cause the distress. Absent proof of actual exposure to the HIV virus as a result of a defendant's negligent conduct, that is, proof of both a scientifically accepted method, or channel, of transmission and the presence of the HIV virus, the fear of contracting AIDS is unreasonable as a matter of law and, therefore, not a legally compensable injury.

Adoption of an actual exposure rule in fear of AIDS cases acknowledges several public policy concerns. First, it ensures that a genuine basis for the fear exists and that the fear is not premised on public misconceptions about AIDS. *Brown v. New York Health and Hosp. Corp.*, 225 A.D.2d 36, 648 N.Y.S.2d 880, 886 (N.Y.App.Div.1996). To hold otherwise would "open a Pandora's Box of 'AIDS-phobia' claims by individuals whose ignorance, unreasonable suspicion or general paranoia cause them apprehension over the slightest of contact with HIV-infected individuals or objects." *Brzoska v. Olson*, 668 A.2d 1355, 1363 (Del.1995). Second, an actual exposure rule preserves an objective component in emotional distress cases necessary to ensure stability, consistency, and predictability in the disposition of those cases. *K.A.C. v. Benson*, 527 N.W.2d 553, 559 (Minn.1995). Consistent results encourage early resolution and settlement of cases. Third, the rule ensures that victims who are exposed to HIV or actually contract HIV as a result of a defendant's negligence are compensated for their emotional distress. *Kerins v. Hartley*, 27 Cal.App.4th 1062, 33 Cal. Rptr.2d 172, 179 (Cal.Ct.App.1994). A rule providing an unrestricted right of recovery for all persons fearing AIDS could exhaust resources of defendants and insurers. Simi-

larly, such a rule could compromise the availability and affordability of medical, dental, and malpractice insurance, medical and dental care, prescription drugs, and blood products. *Id.* Finally, an actual exposure rule protects the justice system from becoming burdened with frivolous litigation. *Brown*, 648 N.Y.S.2d at 886. "Indeed, were we to rule otherwise, one could readily envision fear of AIDS claims being raised for every blood transfusion, accidental needle puncture, or matrimonial (or other) sexual infidelity." *DeMilio v. Schrager*, 285 N.J.Super. 183, 666 A.2d 627 (N.J.Super.Ct. Law Div. 1995).

In this case, Defendants alleged in their motions for summary judgment that Mr. Pendergist was not actually exposed to the HIV or hepatitis B virus as a result of receiving human whole blood Factor VIII instead of Recombinant Factor VIII during his 1993 hernia surgery. Although Mr. Pendergist offered proof of a scientifically accepted method of transmission, the transfusion of a blood product, he failed to offer any evidence that the blood product was contaminated with the HIV or hepatitis B virus. Additionally, Mr. Pendergist was tested for the presence of HIV and hepatitis B approximately six months, one year, and annually for two additional years after exposure to the blood product. Each test was negative. The evidence asserted that a negative test result after six months from the potential exposure to HIV indicates that the person has a 95% probability of not being infected with the virus. Mr. Pendergist's fear of contracting AIDS, therefore, was unreasonable and not a legally compensable injury. Because Mr. Pendergist failed to offer evidence that he suffered a legally compensable injury, an element of both negligent infliction of emotional distress and fraudulent misrepresentation, Defendants were entitled to judgment as a matter of law on both claims.[3]

---

3. Defendants were entitled to judgment as a matter of law on the fraudulent misrepresentation claim for the additional reason that Mr. Pendergist failed to offer evidence of a representation. Defendants denied, and Mr. Pendergist conceded, that no health care professional promised him that he would receive Recombinant Factor VIII during the hernia operation. Had an ap-

propriate medical professional told him he would be administered Recombinant Factor VIII during surgery and had Mr. Pendergist, therefore, consented to the surgery, he would possibly have a claim for battery for any physical injury or mental anguish that he suffered as a result. *See Wilkerson v. Mid–America Cardiology*, 908 S.W.2d 691, 699 (Mo.App.1995)(generally, a bat-

In his response to Defendants' motions for summary judgment, Mr. Pendergist failed to present essential facts to contradict Defendants' assertions that he was not actually exposed to the HIV or hepatitis B virus. Because Mr. Pendergist offered no evidence that he was actually exposed to the HIV or hepatitis B virus, the issue was not genuinely disputed. The trial court, therefore, did not err in granting Defendants' motions for summary judgment.

The judgment of the trial court is affirmed.

All concur.

tery claim will lie if a physician performs an operation without the patient's consent or if the operation is not the surgical procedure to which the patient gave consent). Any emotional distress based on a fear of contracting AIDS, absent evidence of actual exposure to the virus, would not, however, be actionable.