Mrs. M.C. and Mr. B.C.,
Plaintiffs/Respondents/
Cross–Appellants,

v.

Clifford YEARGIN and Marriott International Corp., Defendants/Appellants/ Cross–Respondents.

Nos. ED 74077, ED 74078.

Missouri Court of Appeals,
Eastern District,
Division One.

July 20, 1999.

Case Transferred to Supreme Court
Sept. 21, 1999.

Case Retransferred to Court of
Appeals Feb. 22, 2000.

Original Opinion Reinstated
March 10, 2000.

Bryan Cave LLP, Thomas C. Walsh, Elizabeth C. Carver, St. Louis, for appellant.

Hullverson & Hullverson, L.C., James E. Hullverson, Jr., St. Louis, for respondent.

JAMES A. PUDLOWSKI, Presiding Judge.

This is an appeal from a jury tried case. M.C. (Plaintiff) and B.C. (Plaintiff's husband) instigated this action against Clifford Yeargin (Yeargin), Marriott International Corp. and Marriott Hotel Services, Inc. (collectively, Marriott). Plaintiffs sought recovery on several theories. The jury returned a verdict for Plaintiffs on all theories and assessed damages against Defendants as follows: three million dollars compensatory damages, five million dollars punitive damages against Yeargin,[1] and post-judgment interest; three million dollars compensatory damages, eight million seven hundred thousand dollars punitive damages, and two million eight hundred twenty-two thousand forty dollars in interest against Marriott; and fifty thousand dollars compensatory damages against Marriott for Plaintiff's husband's loss of consortium claim.

Following the verdict, Marriott moved for judgment notwithstanding the verdicts (JNOV), or, in the alternative, for a new trial or, in the alternative, for remittitur or, in the alternative, to amend judgment. The trial court judge granted Marriott's motion for a directed verdict only in regard to the deceit at check-in theory.

Marriott appeals claiming the trial court erred in: denying its motions for a directed verdict and JNOV because Plaintiff failed to submit substantial evidence that Marriott breached any duty to her or caused her damage; denying its motions for a directed verdict and JNOV on Plaintiff's husband's loss of consortium claim; denying its motions for a directed verdict and JNOV on punitive damages; denying its motions for a new trial because the general damage verdicts could not be upheld in that the trial court granted its JNOV regarding the deceit at check-in claim; overruling its objections to Instruction No. 13; allowing Plaintiffs to read a portion of a Federal appellate court opinion and deposition testimony from that case during the punitive stage of the trial; admitting evidence of Plaintiff's fear of contracting AIDS as unreasonable as a matter of law and her subsequent abor-

---

1. Any compensatory damages paid by Yeargin were to be applied as credit to the judgment as to compensatory damages against Marriott.

tion; permitting Dr. Bremner to testify; refusing to enter a remittitur of the jury's compensatory damages or grant a new trial for excessive compensation; and denying its motion for a new trial and refusing to enter a remittitur on the issue of punitive damages. Plaintiffs cross appeal the JNOV. We reverse and remand with instructions for a new trial.

■ Upon review of a jury verdict, we view the facts in the light most favorable to its award. *Fields v. Mitch Crawford's Holiday Motors Co.*, 947 S.W.2d 818, 820 (Mo.App. W.D.1997); *Bayne v. Jenkins*, 593 S.W.2d 519, 521 (Mo. banc 1980). As a preliminary matter, we note that neither party to this appeal complied with Rule 84.04(c) in that neither party submitted a fair and concise statement of facts.[2] Additionally, both parties failed to comply with Rule 84.04(h) in that there were either missing or incorrect citations throughout the statement of facts and argument portions of the briefs. We have, after reviewing 3369 pages of transcript and legal file, compiled the following relevant facts which meet our dictated standard of review:

Plaintiff arrived in Saint Louis for business on 1 August 1994. She checked in at the Marriott Pavilion Hotel in downtown Saint Louis. Plaintiff is a member of Marriott's club for frequent guests and preferred customers known as "Marriott's Club Marquis." As a member of this club, Plaintiff is entitled to an upgrade from a regular hotel room to a concierge hotel room when available.[3] Plaintiff requested a room upgrade at the time of her arrival. Plaintiff testified that she wanted to be in a concierge room for the increased amenities, including an extra measure of safety. Marriott did not upgrade her room status; however, it did issue her a key to the concierge floors.

On the morning of 2 August 1994, Plaintiff exited her room at approximately[4] 6:40 a.m. to meet several business associates for a breakfast meeting in the lounge area on a concierge floor. When she attempted to leave her room, Yeargin pushed Plaintiff back into the room. Plaintiff fought with Yeargin. The commotion caused the guest in another room to get out of the shower and call the Marriott operator to ask for assistance in the neighboring room because there was a situation of "an emergency nature." The Marriott operator called Marriott security. Within one or two minutes, security officers[5] arrived at Plaintiff's door.

As the security approached the closed door of Plaintiff's room, they heard two comments: a woman yelled "Please, don't kill me!" and a man's voice responding, "Shut up, bitch, or I'm going to kill you." Security officers decided not to intervene in the events inside of the hotel room. Instead, they went to a security phone on that floor. The phone, however, was inoperable because it did not have a phone cord.

One security officer then decided to walk to the elevators and use his radio to call the Marriott operator and request police assistance. The security officer testified that after he attempted to use the security phone, it took him two to three

---

2. We caution the attorneys to comply with this rule because failure to do so may be grounds for dismissal. *Rice v. State, Dept. of Social Services*, 971 S.W.2d 840, 842 (Mo. App. E.D.1998).

3. Marriott Club Marquis functions much as an airline frequent flyer program. When a customer is upgraded to a concierge room, the guest is issued a key as some of the concierge floors are locked. To access a locked concierge floor, the guest must use the key to open the elevator door; those conc-

ierge floors which are locked, are only accessible by guests with keys.

4. The timetable of events is greatly disputed in this case by both sides and various witnesses. Several witnesses stated different times for the accomplishment of one activity. The determination of the timetable is a province for the jury. Thus, we use the times as a general guideline in the light most favorable to the jury's award.

5. Marriott personnel were unarmed.

additional minutes before he radioed the operator. When speaking with the Marriott operator, the security officer intentionally did not communicate the gravity of the situation in Plaintiff's room; he worried that someone might hear him and become alarmed. The Marriott operator then relayed the incorrect information from the security officer to the Saint Louis Police.

There was conflicting testimony that because the situation was misidentified as a domestic dispute, the police did not react to the gravity of a life-threatening situation. While waiting for the police to arrive, it is unclear what Marriott security officers were doing. However, they did observe Yeargin exit Plaintiff's room, enter the elevator, and casually walk out of the hotel while holding a washcloth to his bleeding face.

Contemporaneously to the security officers standing outside of Plaintiff's room, Plaintiff's associates began to worry about her because she failed to promptly arrive at their early morning meeting. They decided to call her, but there was no answer in her room. Plaintiff testified that she heard their telephone call, but was unable to answer the phone as she was fighting with Yeargin. During this fight, both Plaintiff and Yeargin suffered lacerations from which they bled. At approximately the same time as the phone call, Yeargin made loud threats to Plaintiff which presented the possibility of a homicide and were heard by the Marriott security officers. Then, Yeargin began to sodomize her. Yeargin retrieved a washcloth from the bathroom and exited the room.

Once Yeargin vacated the premises, police arrived and began their investigation. Marriott's security cameras did not capture a picture of Yeargin. Yeargin was not apprehended by police until 24 September 1994, fifty four days after the assault on Plaintiff. At that time, police learned and informed Plaintiff that Yeargin was HIV +.

In late August, Plaintiff discovered she was pregnant. Testimony revealed that Plaintiff suffered stress and chemical changes in her body due to the attack which, in turn, rendered her birth control pills ineffective. Because of her exposure to Yeargin's blood during the attack, Plaintiff and her husband were concerned about transmission of HIV to the fetus. After learning that had Yeargin infected Plaintiff the risk of transmission to the fetus was 40%, Plaintiff and her husband decided to terminate the pregnancy.

Upon appeal, we remind attorneys to follow Rule 84.04(f) in the compilation of their briefs. This Rule extends to both Appellants and Respondents. When responding to an appellant's brief, the points relied on should remain separate, divisible arguments and should be addressed in the order presented. In addressing the numerous issues in this appeal, we first address Marriott's point four, the trial court's JNOV with regard to Plaintiff's deceit at check-in theory, and Plaintiff's cross appeal because the two points are correlated. Our analysis of these points will substantially affect the remainder of the points relied on.

Marriott claims that while the trial court properly granted its JNOV with regard to Plaintiff's deceit at check-in theory, the trial court erred in not granting it a new trial because there was only a general damage verdict and it is impossible to know what proportion of damages awarded by the jury was attributable to the deceit at check-in theory. Plaintiff replies that the trial court's denial of the new trial was proper and cross appeals the JNOV.

Marriott relies on two cases to substantiate its contention that the trial court should have granted its motion for a new trial. In *Musielak v. International Shoe Co.*, 387 S.W.2d 217 (Mo.App.St.L.Dist. 1965), there were two instructions submitted to the jury and the jury returned a general verdict of liability. Upon appeal, the court held that the trial court erroneously instructed the jury on one of the two

instructions. Thus, the trial court did not err in granting a new trial because it was not possible to distinguish if the jury's verdict was based in total or in part on the faulty instruction. *Id.* at 223.

In *Johnson v. St. Louis Public Service Co.*, 361 Mo. 844, 237 S.W.2d 136 (1951), the jury returned a general verdict after the respondent's submission on primary negligence and humanitarian negligence. The court found that the claim of primary negligence was nullified, thus only the humanitarian negligence claim was properly submitted to the jury. The jury returned a general verdict for respondent finding liability on both claims. However, the verdict was not allowed to stand due to the nature of the single general verdict, because it was impossible to distinguish whether the verdict was based on the humanitarian negligence claim or the unfounded primary negligence claim. *Id.* at 141.

The instant case is similar. The trial court granted a JNOV regarding Plaintiff's deceit at check-in theory, but denied Marriott's motion for a new trial. When the jury received the case, it was given two instructions for liability: deceit at check-in and negligent security. The jury found Marriott to be liable under both theories. However, the jury had only one negligence instruction from which it could assess damages against Marriott. Since one of the theories of submission was found to be defective by the trial court, and the jury

returned a general verdict of liability, we find that it is impossible to know how the jury apportioned Marriott's liability under the two theories. Therefore, the trial court erred in failing to grant Marriott a new trial.

 Plaintiff cross appeals the trial court's ruling on the JNOV.[6] Points on appeal must conform to three requirements: stating the ruling or action of the trial court from which the appellant complains; why it is erroneous; and what was before the court supporting the correct ruling. *J.A.D. v. F.J.D.*, 978 S.W.2d 336, 338 (Mo. banc 1998). As recently as *James v. Union Electric Co.*, 978 S.W.2d 372 (Mo.App. E.D.1998), Plaintiff's attorneys were cautioned by this Court regarding the proper formulation of a point on appeal and possible consequences for failure to comply. Plaintiffs have failed to meet this standard. Accordingly, we dismiss this cross appeal pursuant to Rule 84.04(d).

 In its first point on appeal, Marriott argues that the trial court erred in denying its motions for a directed verdict and for a judgment notwithstanding the verdict (JNOV) because Plaintiff failed to make a submissible case of negligence by failing to submit substantial evidence that Marriott breached its duty to her or caused her damage. Marriott continues in this point to claim that imposition of liability on these facts would make it an absolute insurer of the safety of all its guests.[7]

---

6. Plaintiff's cross appeal point reads:
 The Trial Court erred in granting Marriott (sic) J.N.O.V. on MC's Deceit at Check In Claim after the jury returned a verdict in MC's favor. Proximate causation is satisfied where Marriott's deceit in placing MC in an ordinary room deprived her of the safety advantages of concierge, where there was an attendant, and limited elevator access. The tort of deceit was complete when Marriott put MC in an inferior room, and beyond that Marriott is liable for the damages which result, notwithstanding subjective surprise.

7. We remind the attorneys to review the dictates of *Thummel v. King*, 570 S.W.2d 679

(Mo. banc 1978) when drafting their points relied on. We emphasize this matter due to its importance.

> The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts. It is rooted in sound policy. Perhaps the most important objective of the requirement relative to the points relied on is the threshold function of giving notice to the party opponent of the precise matters which must be contended with and answered. Absent that, it is difficult, at the very least, for respondent's counsel to properly perform his briefing obligation. This is

■ In review of the denial of directed verdict motions and JNOV, we view the evidence and reasonable inferences therefrom in the light most favorable to the verdict. *Garrett v. Overland Garage & Parts, Inc.*, 882 S.W.2d 188, 190 (Mo.App. E.D.1994). We disregard any evidence which is unfavorable to the verdict. *Id.*

■ To make a submissible case of negligence, Plaintiff must plead and prove the following elements: (1) a duty by the defendant to protect the plaintiff from injury; (2) the failure of the defendant to execute that duty; and (3) the plaintiff sustains an injury due to defendant's failure to execute that duty. *Groce v. Kansas City Spirit, Inc.*, 925 S.W.2d 880, 884 (Mo.App. W.D. 1996); *Claybon v. Midwest Petroleum Co.*, 819 S.W.2d 742, 743 (Mo.App. E.D.1991).

■ We turn our attention first to the element of duty. Businesses, generally, do not owe a duty to protect their invitees from criminal activity. *Groce*, 925 S.W.2d at 884. However, there are two exceptions to this rule: the "special relationship" test and the "special circumstances" test. *Id.* While the special circumstances exception deals with the foreseeability of crimes based on past incidents to create a duty of care, the special relationship exception creates a duty based solely on the positions of the parties. This case deals with the special relationship exception to the general rule. We impose liability when a special relationship between the business and the invitee exists such that the plaintiff entrusts him or herself "to the protection of the defendant and relied upon the de-

fendant to provide 'a place of safety.'" *Id.* Historically, this relationship developed from the relationship of a common carrier to its passengers which is analogous to the relationship between an innkeeper and its guests. *Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881, 886 (Mo. banc 1983). The relationship between the innkeeper and its guests imposes affirmative duties upon the innkeeper in the protection of persons and property. *Id.* at 885.

Hence, during the period of time in which Plaintiff was a guest at Marriott, a special relationship was created and Marriott had a duty to Plaintiff. "It is well settled that the existence of a duty owed by an alleged tortfeasor necessary to establish a submissible case of negligence is a question of law to be determined by the trial court viewing the evidence in a light most favorable to the plaintiff." *Parra v. Building Erection Services*, 982 S.W.2d 278, 284 (Mo.App. W.D.1998).

■ This duty is one of reasonable care under the circumstances and is imposed as a matter of law. *Madesco*, 648 S.W.2d at 887. "The cases say uniformly that the innkeeper is not an insurer." *Id.* at 886. While *Shute v. Prom Motor Hotel, Inc.*, 446 S.W.2d 137, 140 (Mo.App. K.C.Dist.1969), states that an innkeeper is held to the exercise of a "very high degree of care," we need not decide the degree of care owed to Plaintiff since Plaintiff submitted its case and received a verdict on an "ordinary care" instruction. *See Madesco*, 648 S.W.2d at 886. Furthermore,

particularly so in a case such as this where the facts are complex. In addition, such notice is essential to inform the court of the issues presented for resolution. Clear statement of the points relied on facilitates full advocacy and affords the opportunity for clarification by meaningful questions directed to the issues stated in the points relied on. If the appellate court is left to search the argument portion of the brief (or even worse, to search the record on appeal) to determine and clarify the nature of the contentions asserted, much more is at stake

than a waste of judicial time (even though in this time of increased litigation and heavy caseloads, that alone is sufficient justification for the rules). The more invidious problem is that the court may interpret the thrust of the contention differently than does the opponent or differently than was intended by the party asserting the contention. If that happens, the appellate process has failed in its primary objective of resolving issues raised and relied on in an appeal. *Id.* at 686.

degrees of care are designed to be communicated to juries, rather than providing a standard to be applied in determining whether the plaintiff made a submissible case. *Id.*

Intertwined with Marriott's first point relied on is its fifth point. In that point, Marriott claims the trial court erred in overruling its objections to Instruction No. 13 and its motion for a new trial because the instruction departed prejudicially from the MAI, gave the jury a roving commission, did not accurately state Missouri law, imposed inappropriate duties upon Marriott and allowed the jury to assess Marriott liability for actions which caused Plaintiff no harm. We believe that Instruction No. 13 was defective in that it improperly instructed the jury.

▮ Plaintiff argues that the *Madesco* court's imposition of an "immediate duty to take action" implies innkeeper action to reasonably rescue Plaintiff. We find the "immediate duty to take action" in *Madesco* does not extend to such duties. Once the hotel staff in *Madesco* saw the man enter the woman's restroom, it would have been immediately apparent that something was amiss. In contrast, no employee saw Yeargin push Plaintiff into the room. If hotel staff observe a person enter a hotel room, there is no need for them to act without a corresponding observation of a criminal activity. However, just because we find Marriott did not have a duty to rescue as a matter of law, this finding does not absolve it for its underlying duty as an innkeeper. When the circumstances became apparent to the security guards there was some sort of activity from which Plaintiff needed Marriott's assistance, at that point Marriott was required to take immediate action.

▮ Since Marriott has a duty to Plaintiff as an innkeeper, we examine the second element of a negligence claim,

breach of the duty owed. Once the jury is apprised of all the facts in the case, it is the jury's responsibility to determine whether there was breach of the duty. *Aaron v. Havens*, 758 S.W.2d 446, 448 (Mo. banc 1988). The facts and reasonable inferences from the evidence favorable to Plaintiff shows that Plaintiff submitted substantial evidence from which the jury could have determined that Marriott breached its duty.

▮ Finally, Marriott argues that it did not proximately cause Plaintiff's injuries. This falls under the third prong of the negligence claim: determining whether Plaintiff's injuries were due to defendant's failure to execute its duty.[8] The test for proximate cause is whether the negligence sets in motion a chain of circumstances leading to the injury. *Simonian v. Gevers Heating & Air Conditioning, Inc.*, 957 S.W.2d 472, 475 (Mo.App. E.D.1997). The injury must be a reasonable and probable consequence of the act or omission of the defendant. *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 865 (Mo. banc 1993). This is determined by looking back, after the occurrence, and examining whether the injury appears to be a reasonable and probable consequence of the conduct. *Tompkins v. Cervantes*, 917 S.W.2d 186, 190 (Mo.App. E.D.1996). The defendant's negligence need not be the sole cause of the injury; it must be one of the causes without which the injury would not have occurred. *Schaffer v. Bess*, 822 S.W.2d 871, 876 (Mo.App. E.D.1991).

▮ Proximate cause is usually a jury question; however, a court may decide the issue "when the evidence reveals the existence of an intervening cause which eclipses the role the defendant's conduct played in the plaintiff's injury." *Tompkins*, 917 S.W.2d at 186, 190. Marriott fails to demonstrate there was an intervening cause which would absolve it of its duty to Plaintiff to protect her from the criminal con-

---

**8.** Causation encompasses both causation in fact and proximate cause. Since Marriott only raises proximate cause on appeal, we decline to address the issue of causation in fact.

duct. Because there was no intervening cause in this case, the determination of whether proximate cause exists is a jury question. If Marriott acted negligently in response to the emergency, it is foreseeable that an injury may result to their guests. Thus, the requirement of foreseeability, as required under Missouri law, was met and the issue of causation was properly submitted to the jury.

In sum, Marriott owed Plaintiff a duty of reasonable care under the circumstances. However, it is a jury determination as to whether Marriott was in breach of this duty and if the possible breach resulted in any damages to Plaintiff. There was no error in submitting the negligence claim to the jury. Marriott's point one is denied.

In its second point on appeal, Marriott argues that the trial court erred in denying its motions for directed verdict and JNOV on the consortium claim of Plaintiff's husband because he failed to make a submissible case in that he offered no evidence of loss of services, society or companionship, and the evidence adduced showed affirmatively that he suffered no such loss. Following the submission of the case, the jury awarded Plaintiff's husband fifty thousand dollars on his loss of consortium claim.

A loss of consortium claim is a separate personal injury claim; however, it is derivative in nature in that it must be incident to a spouse's injury. *Burke v. L & J Food and Liquor, Inc.*, 945 S.W.2d 662, 664 (Mo.App. W.D.1997). The spouse seeking loss of consortium must show that defendant's original injury created damages for the spouse. *Id.*; *Lear v. Norfolk and Western Ry. Co.*, 815 S.W.2d 12, 14 (Mo.App. W.D.1991). If one spouse does not suffer an injury, the other spouse may not be awarded damages for loss of consortium. *Lear*, 815 S.W.2d at 14. Additionally, if one spouse has suffered injury, it is not automatic that the other spouse will recover damages for loss of consortium. *Id.*

Plaintiff's husband does not have a right to recovery merely because the jury found Plaintiff to be injured. He may only recover if Plaintiff's injury produces damages attributable to him. *See Bly v. Skaggs Drug Centers, Inc.*, 562 S.W.2d 723, 728 (Mo.App.K.C.Dist.1978).

At trial, Plaintiff testified her marital relationship suffered due to the injuries she sustained from the attack. However, Plaintiff's husband did not testify regarding any loss or damage he suffered due to Plaintiff's injuries.

Since Plaintiff's case is being reversed and remanded to the trial court, it follows that her husband's claim must also be reversed and remanded. Due to the derivative nature of Plaintiff's husband's claim, if upon remand, the jury finds that Plaintiff did not suffer recognizable injuries, Plaintiff's husband will not be entitled to recovery. Alternatively, the jury could find that Plaintiff suffered injury. Then, Plaintiff's husband would be entitled to claim loss of consortium provided that he is able to show that he suffered a direct injury based upon his wife's injury.

In its third point, Marriott alleges the trial court erred in denying its motions for a directed verdict and for a JNOV on the issue of punitive damages because Plaintiff did not make a submissible case in that there was no showing that Marriott knew or had reason to know there was a high degree of probability that its actions would result in injury. In reviewing whether Plaintiff made a submissible case of punitive damages, we view the evidence, and all reasonable inferences therefrom, in the light most favorable to the plaintiff. *Ryburn v. General Heating & Cooling*, 887 S.W.2d 604, 606 (Mo.App. W.D.1994).

Missouri courts confine punitive damages to cases of "willful wrongdoing, or recklessness which is the legal equivalent of willfulness." *Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 75 (Mo. banc 1990). Punitive damages are imposed to punish and deter; the remedy

should be applied sparingly. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 110 (Mo. banc 1996).

 Punitive damages are awardable in a negligence case only if the defendant, at the time of the negligent act, "knew or had reason to know that there was a high degree of probability that the action would result in injury." *Alack v. Vic Tanny Intern. of Missouri, Inc.*, 923 S.W.2d 330, 338 (Mo. banc 1996), quoting *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 436 (Mo. banc 1985). The defendant must have displayed complete indifference to, or conscious disregard for, the safety of others. *Id.* at 339. The evidence must meet the clear and convincing standard of proof. *Rodriguez*, 936 S.W.2d at 111.

 The jury assessed punitive damages of eight million seven hundred thousand dollars in favor of Plaintiff. After construing the evidence and all reasonable inferences therefrom in a light most favorable to the plaintiff, we find that punitive damages for Plaintiff's negligent security claim were inappropriate because Plaintiff failed to show by clear and convincing evidence that Marriott knew or had reason to know there was a high degree of probability that its action would result in injury. Furthermore, Plaintiff failed to show clear and convincing evidence that her injury was the result of Marriott's willful or conscious disregard for safety. Accordingly, we hold that plaintiff failed to make a submissible case as to punitive damages against Marriott.

In point five, Marriott argues the trial court erred in overruling both its objections to Instruction No. 13 and its motion for new trial because the instruction prejudicially departed from MAI 22.05, did not use clear and plain language, did not comply with Rule 70.02(b), and gave the jury a roving commission. Marriott further alleges Instruction No. 13 was defective and prejudicial because it did not accurately state Missouri law, imposed inappropriate duties on Marriott, and authorized the jury to impose liability on Marriott for actions which did not cause Plaintiff any damage.

 We first address the sufficiency of Marriott's objections raised at trial. Points on appeal must be based upon objections raised at trial; objections can not be broadened or changed on appeal beyond those made at trial. *Cole v. Goodyear Tire & Rubber Co.*, 967 S.W.2d 176, 183 (Mo.App. E.D.1998). Contrary to Plaintiff's allegation, we find that Marriott's point on appeal was based upon objections raised at trial and, as required by Rule 70.03, Marriott made "specific objections to instructions considered erroneous stating distinctly the matter objected to and the grounds of the objection."

 When reviewing claimed instructional error, we view the evidence most favorably to the instruction, disregard contrary evidence, and reverse where the party challenging the instruction shows that the instruction misdirected, misled, or confused the jury. *King v. Ryals*, 981 S.W.2d 151, 154 (Mo.App. E.D.1998).

Instruction No. 13, Plaintiff's non-MAI approved verdict directing instruction on the claim of negligent security, instructed the jury as follows:

Your verdict must be for [Plaintiff] if you believe:

First, [Plaintiff] was a paying guest at Marriott's hotel, and

Second, Marriott either:

 (a) failed to protect her against unreasonable risk of physical harm by Clifford Yeargin, or

 (b) failed to rescue her from Clifford Yeargin's attack after Marriott knew or had reason to know that she was being attacked, or

 (c) failed to adequately summons [sic] police to rescue her from Clifford Yeargin's attack after Marriott knew or had reason to know that she was being attacked, or

(d) failed to promptly apprehend Clifford Yeargin after the attack; and

Third, in any one or more of the respects submitted in paragraph Second, Marriott was negligent, and

Fourth, such negligence directly caused, or directly contributed to cause plaintiff damage.

When there is no applicable MAI and the instruction must deviate from the approved forms, such an instruction shall be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.02(b). Within Rule 70.02(b), the test is whether the instruction "follows the substantive law and can be readily understood by the jury." *Lashmet v. McQueary*, 954 S.W.2d 546, 550 (Mo. App. S.D.1997).

Plaintiff argues *Madesco* created an innkeeper duty to rescue. As discussed above, we find *Madesco* does not create such a duty, and therefore Instruction No. 13 was defective because it improperly instructed the jury. Because of this finding, we do not reach the other disjunctive submissions in the instruction. Point granted.

 In its sixth point, Marriott contends the trial court erred in allowing Plaintiff to read to the jury a portion of *Blinzler v. Marriott International, Inc.*, 81 F.3d 1148 (1st Cir.1996), and in allowing Plaintiff's counsel to read to the jury portions of Marriott employee Chad Callaghan's deposition regarding *Blinzler*. Marriott argues *Blinzler*: involved different facts with no connection to Plaintiff's incident, was inadmissible hearsay because it lacked foundation, was not the proper subject of judicial notice, was misleading, and should not have been read to the jury in that courts do not judicially notice the records and facts in one proceeding in deciding another and different proceeding. Marriott also claims Plaintiff did not establish the prerequisites for the admission of former testimony given in another case, and that the questions and answers contained in Callaghan's deposition excerpts were irrelevant, inflammatory, and prejudicial.

During the punitive damages phase, the trial court permitted Plaintiff to read to the jury excerpts from *Blinzler*. Marriott objected that *Blinzler* was, *inter alia*, irrelevant, inadmissible hearsay, prejudicial, and inadmissible because evidence of similar prior acts of negligence are not admissible to show that a party acted negligently at the time of a subsequent injury.

 We give substantial deference to the trial court's decisions regarding admissibility of evidence, and disturb them only upon finding an abuse of discretion. *Felton v. Hulser*, 957 S.W.2d 394, 397 (Mo. App. W.D.1997). Evidence of similar acts of negligence generally is not admissible to demonstrate that a party acted negligently at a subsequent incident. *Lohmann v. Norfolk & Western Railway Company*, 948 S.W.2d 659, 671 (Mo.App. W.D.1997).

*Blinzler* arose from the death of Gloria Blinzler's (Gloria) husband in a Marriott hotel located in New Jersey. While staying at the hotel, Gloria's husband suffered a heart attack and the court found that the hotel operator's failure to call an ambulance until fifteen minutes after being asked to do so was the proximate cause of death. In this case, Plaintiff read to the jury an excerpt from *Blinzler* that addressed a daily security log and telephone log, also known as a Zeta report, that Marriott could not locate. The plaintiff in *Blinzler* was allowed an inference of spoliation of evidence; the jury could infer that Marriott destroyed the logs in bad faith and could "conclude that the unavailability of two important documents, both of which bear upon the timing of the call for emergency assistance, was something more than a coincidence." *Blinzler*, 81 F.3d at 1159. However, in the case at bar, the trial court informed the jury that "the daily security log and the Zeta report were turned over by defendant Marriott to the plaintiff in a timely manner." *Blinzler*

involved a different hotel, in a different city, with different employees and policies.

 Plaintiff alleges that in this case, the jury could also infer spoliation of evidence because Marriott failed to produce the 2 August room occupation records and concealed a potential witness, Henry Graham (Graham), a former Marriott room service employee. Plaintiff claims she is entitled to an inference of spoliation, a potential crime and bad act. Under the doctrine of spoliation, a party seeking an adverse inference against its opponent must make a prima facie showing that the evidence was destroyed under circumstances manifesting fraud, deceit, or bad faith. *Schneider v. G. Guilliams, Inc.*, 976 S.W.2d 522, 525 (Mo.App. E.D.1998).

Testimony confirmed that Marriott unsuccessfully searched for the 2 August records. Additionally, the 2 August records are of no importance. Also, Graham left Marriott's employ one year before trial, and Plaintiff had opportunities to discover Graham's potential knowledge. Marriott's actions do not amount to fraud, deceit, or bad faith. Plaintiff is not entitled to an inference of spoliation, and therefore, Marriott's actions in regard to the 2 August records and Graham were neither crimes nor bad acts.

Further, Plaintiff's counsel made the following statements after reading the *Blinzler* excerpt to the jury:

> Marriott Corporation ignored the lessons of the past in its hotel administration, ... send them a message. If you don't, they'll continue to do *Blinzler*, ... they'll continue their abuses and wrongdoing and their negligence, ... I hope that you will be as *Blinzler* blunt with them in your verdict [punitive] as the Federal judge was in the *Blinzler* case. Stop that kind of abuse and misconduct.

Plaintiff cites *State v. Stallings*, 957 S.W.2d 383, 390[9] (Mo.App.W.D.1997), to allege *Blinzler* is admissible because uncharged crimes or bad acts which tend to

establish motive, intent, common scheme, or the absence of mistake or accident are admissible. However, we find that Plaintiff read the excerpt to the jury to correlate Marriott's inferred negligence in *Blinzler* with the alleged concealment in the case at bar. The trial court abused its discretion in allowing Plaintiff to read the *Blinzler* excerpt to the jury because it is not admissible to demonstrate that Marriott acted negligently in this subsequent incident.

The trial court also permitted Plaintiff to read to the jury excerpts from the deposition of a Marriott employee, Chad Callaghan, regarding the *Blinzler* case. The trial court erred in allowing Plaintiff to read *Blinzler* to the jury and, consequently, Callaghan's deposition testimony regarding *Blinzler* is also inadmissible.

 In its seventh point on appeal, Marriott claims the trial court abused its discretion in admitting evidence of Plaintiff's fear of contracting AIDS and her decision to have an abortion because her fear was unreasonable as a matter of law.

 Missouri adopted the actual exposure rule in fear of AIDS cases. *Pendergist v. Pendergrass*, 961 S.W.2d 919, 925 (Mo.App. W.D.1998). The fear of contracting AIDS is deemed unreasonable as a matter of law when there is not proof of: (1) a scientifically accepted method of transmission, and (2) the presence of the HIV virus. *Id.* at 926. Yeargin, Plaintiff's attacker, is HIV+. There was testimony at trial regarding Yeargin's health status. In its brief, Marriott claims that this was hearsay and thus, inadmissible as proof of the presence of the HIV virus. Upon reading Marriott's citation to the transcript, we note that it did not object to the testimony of the detective who stated Yeargin was HIV+.

 There must be an objection to preserve evidentiary questions for appeal. *Rogers v. B.G. Transit Corp.*, 949 S.W.2d

---

**9.** Plaintiff incorrectly cites to page 396 which is located within the text of Felton v. Husler.

151, 153 (Mo.App. S.D.1997). At the time the evidence is being presented at trial, there must be an objection stating specific grounds upon which the trial judge may base a ruling. *Id.* That same objection then must be set forth in the motion for new trial and in the appeal brief for the objection to be preserved. *Id.* Hearsay objections must be raised at trial. *Champ v. Malon*, 905 S.W.2d 90, 93 (Mo.App. E.D. 1995). Generally, statements that are offered without objection may be considered by the jury even if with a timely objection the statement would not be admitted. *State v. Basile*, 942 S.W.2d 342, 357 (Mo. banc 1997). Since Marriott did not raise its hearsay objection at trial, the testimony is allowed.

Plaintiff also needs to establish that a scientifically accepted method of transmission occurred. There is uncontraverted evidence that during Yeargin's act of sodomy HIV+ blood and Plaintiff's mucus membrane came into contact. This is a generally known method of transmission. Therefore, Plaintiff's fear of contracting AIDS was not unreasonable as a matter of law. Point denied.

In point eight, Marriott alleges the trial court abused its discretion in permitting Dr. Douglas Bremner (Dr. Bremner) to testify about alleged brain damage to Plaintiff because his testimony was inadmissible in that the medical community has not generally accepted his theories. Moreover, Marriott maintains that Dr. Bremner's opinions do not rest upon a reliable foundation, his testimony was speculative, and his opinions about Plaintiff's hippocampal volume were irrelevant. Marriott asserts that Missouri applies the *Frye* v. *U.S.*, 54 App.D.C. 46, 293 F. 1013, 1014 (1923), standard to the admissibility of scientific evidence. Plaintiff argues that Section 490.065 RSMo (1994) governs admissibility of expert proof in civil cases, and because of its similarities to the Federal Rules of Evidence (FRE), the *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), factors apply. However, Plaintiff maintains that even if *Frye* applies, she also met that standard.

The trial court's decision to admit expert testimony is reviewed for an abuse of discretion. *Whitman's Candies, Inc. v. Pet Inc.*, 974 S.W.2d 519, 527 (Mo.App. W.D.1998). We will reverse only when the ruling of the trial court is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration. *Id.*

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the United States Supreme Court recently focused upon the admissibility of expert testimony in light of *Daubert*. *Daubert* imposes a gatekeeping obligation upon a trial judge to determine whether scientific expert testimony is relevant and reliable. *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786. *Daubert* provided four factors for trial court consideration: (1) whether the theory can be objectively proven, (2) whether the expert's methodology has been subject to peer review, (3) the potential rate of error, and (4) whether the expert's work has been generally accepted in the scientific community. *Id.*

In *Kumho*, the Supreme Court interpreted FRE 702 and held that the trial judge's "gatekeeping" obligation set forth in *Daubert* applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. *Kumho*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238. The Supreme Court stated that "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question," the trial judge must determine whether the testimony is reliably based in the knowledge and experience of the relevant discipline. *Id.* at 1175. The Supreme Court additionally concluded that a trial court "may" consider one or more of the *Daubert* factors when

doing so will assist with determining the particular testimony's reliability. *Id.*

The Missouri Supreme Court continues to apply the *Frye* test to the admissibility of expert testimony in criminal cases and in civil cases. *State v. Kinder*, 942 S.W.2d 313, 326 (Mo. banc 1996); *State v. Swain*, 977 S.W.2d 85, 86 (Mo.App. E.D.1998); *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 860 (Mo. banc 1993). *Frye* requires only that expert testimony be based on scientific principles generally accepted in the relevant scientific community. *Frye*, 293 F. at 1014. The record indicates that Marriott objected to admission of Dr. Bremner's conclusion that Plaintiff suffered hippocampal damage from post-traumatic stress disorder (PTSD) brought on by the incident. We note that the trial court denied Marriott's request for a *"Frye*-type" hearing on the admissibility of Dr. Bremner's testimony.

Dr. Bremner, a physician and Assistant Professor of Diagnostic Radiology Psychiatry at Yale Medical School, explained that his current research is an extension of a study of the effects of stress on neurobiology in primates. The study, performed by Dr. Sapolsky, revealed that primates exposed to stress suffered shrinkage of the brain area known as the "hippocampus." Dr. Sapolsky's research was conducted over a period of twenty years and involved the experimental induction of stress, which is inappropriate for human beings. Dr. Sapolsky studied the primates before and after inducing stress.

Dr. Bremner administered tests to Plaintiff and concluded that she suffered from PTSD. Marriott's expert agreed. However, Marriott objects to Dr. Bremner's conclusion that Plaintiff suffered brain damage in the form of diminished hippocampal volume because of the incident at Marriott. Dr. Bremner's conclusion was based on his study of stress suffered by Vietnam combat veterans and children sexually abused over a period of at least one year. Dr. Bremner stated that it was eighty percent probable and

"reasonable to assume" that Plaintiff's hippocamus changed, but "she could have been born with a smaller hippocamus." Additionally, Dr. Bremner admitted that: he was "not certain" if Plaintiff's hippocampal volume is permanently smaller; medical researchers typically seek baseline information about a patient before deciding whether there has been a physical change; and there are no accepted normative values for hippocampal volume.

The trial court denied Marriott's request for a *"Frye*-type" hearing stating:

Again, I believe as, again, as a gatekeeper here to keep junk science from the ears and eyes of the jury, that is my role, my role is not to pass upon the exactitude of any particular discipline. I think there is *adequate information* here for Doctor Bremner to put his conclusions before this jury. I think there is *sufficient information* for him to be tested and cross examined and confronted...I believe there's *sufficient* and *adequate* basis to allow him to talk to the jury based upon his expertise about his findings.

(emphasis added).

We find that the trial court abused its discretion in admitting Dr. Bremner's testimony because the court did not find that he based it on scientific principles generally accepted in the relevant scientific community or within the boundaries of Section 490.065 RSMo (1986). The trial court found there was a "sufficient and adequate basis" for Dr. Bremner to testify about a decrease in hippocampal volume. The Missouri Supreme Court continues to apply the *Frye* test to the admissibility of expert testimony. The trial court failed to determine the admissibility under the *Frye* test, additionally, there is no evidence that Dr. Bremner's methodology of arriving at his theory of diminished hippocampal volume is generally accepted. Without further evidence of the acceptability of Dr. Bremner's theory, we must reverse the

admission of Dr. Bremner's testimony referring to hippocampal volume.

In points nine and ten, Marriott argues the trial court abused its discretion in denying its motion for new trial and in refusing to enter remittitur of the compensatory and punitive damages awards. Marriott claims the amount of the compensatory verdict exceeds fair and reasonable compensation for Plaintiff's injuries and damages in that it exceeds Plaintiff's economic damages by almost three million dollars, is out of line with awards in similar cases, was engendered by trial error, and resulted from the bias and prejudice of the jury. In light of our findings above, we need not address these points.

Marriott also argues the punitive damages judgment is grossly excessive, shocks the conscience of the court, demonstrates bias, passion and prejudice of the jury, and denies Marriott due process. Marriott further alleges the punitive damages constitute an excessive fine unsupported by evidence, are grossly disproportionate to previous, comparable punitive awards, and bear no relationship to the actual damages. The point is rendered moot because of our finding.

The judgment against Marriot International Corp. and Marriot Hotel Services, Inc. only is reversed and remanded for a new trial in accordance with this opinion.

WILLIAM H. CRANDALL, Jr., Judge, and CLIFFORD H. AHRENS, Judge, concur.