Nancy Ann JAMES, Respondent,

v.

Charles Donn JAMES, Appellant.

No. SD 23647.

Missouri Court of Appeals,
Southern District.

June 3, 2002.

Petition for Rehearing and/or Transfer
Denied July 9, 2002.

Application for Transfer Denied
Aug. 27, 2002.

Reed Brooks Kenagy, III, Steelville, for appellant.

Lisa Ann Ghan, Springfield, for respondent.

Before VICTOR C. HOWARD, P.J., and JOHN R. O'MALLEY and DANIEL F. KELLOGG, JJ.

DANIEL F. KELLOGG, Judge.

Charles Donn James (Husband) appeals the judgment of the Circuit Court of Greene County dissolving the marriage of Husband and Nancy Ann James (Wife).

On appeal Husband contends the trial court erred in classifying, valuing, and dividing the property of the parties. Husband specifically claims: 1) the finding that the stock of Donn James Holdings, Inc. (DJ), was marital property was against the weight of the evidence, 2) the valuation of the DJ stock was based upon improperly admitted opinion testimony, and 3) a Dent County Bank and Trust money market account (Account) was improperly classified as marital property.[1]

We affirm.

### Statement of Facts

The evidence adduced at trial supports the following: Husband and Wife were married on January 29, 1989, and separated on or about July 21, 1997. There were no children born of the marriage.

Both prior to and throughout the marriage, Husband was the owner and funeral director of two mortuaries in Missouri, a cemetery business, and a quarter horse operation. The funeral homes are located in Salem and St. James. Although these businesses were all separately incorporated, they eventually became wholly owned subsidiaries of DJ in 1988.

Wife began working for the funeral home in Salem in January of 1989, shortly before the marriage of the parties. She managed the funeral home in Husband's absence, answered the phone, made funeral arrangements, drove a hearse, and was present for most visitations. She was also responsible for the office paperwork, including making death log entries, filing life insurance claims, and providing accounting services for the cemetery.

Shortly before they were married, Husband told Wife he wanted to make her a co-owner of his business. To that end Husband and Wife met with Husband's CPA, Austin Mitchell, in January 1989. Wife's understanding following that meeting was that she was a co-owner of the business. Subsequent advertisements and promotional materials identified Husband and Wife as co-owners of the business. In addition, Wife served first as Assistant

---

1. A fourth point relied on, involving a MetLife insurance policy, was abandoned by Husband at oral argument.

Secretary and later Secretary of DJ during the marriage.

Husband and Wife began co-mingling funds prior to their marriage, beginning with the purchase of a Certificate of Deposit in August 1988. Throughout the course of the marriage, the parties continued to co-mingle business and personal funds and to pay a significant portion of their personal expenses with business funds. For example, in 1997 an average of nearly $15,000 per month was expended by the business for the parties' personal expenses.

At trial both parties presented expert testimony concerning the valuation of the marital assets. This included items of personal property, as well as the value of DJ and all of its holdings.

Evidence of Husband's marital misconduct was also presented at trial. This centered on three extra-marital affairs, several occurrences of physical and verbal abuse of Wife, and an instance of threatened harm to a civil process server. At the point in the trial when this was revealed, Husband was admonished to refrain from making disparaging remarks during the proceedings.

This evidence of misconduct was unrefuted. Husband left the trial following the testimony during the morning of December 2, 1999, and did not return for the afternoon session. The trial court found Husband's voluntary absence tantamount to a decision not to testify at trial, leaving the majority of Wife's testimony unchallenged.

Judgment was entered by the trial court on January 21, 2000. In its judgment, the court classified the stock of DJ as marital property and awarded it to Husband, with Husband ordered to pay Wife the sum of $550,000 as her share of this marital asset. The Account, with a value of $108,000, was also found to be marital property, with each party awarded $54,000 as their share of this asset.

A MetLife insurance policy, in the amount of approximately $100,000 was also awarded to Wife. In addition Wife was awarded attorney's fees of $54,000 and one-half of her costs in hiring experts. Additional costs and expenses were taxed to Husband. This appeal follows.

## Standard of Review

■■ Upon review of the trial court's judgment, we are guided by the standard set by the Supreme Court of Missouri in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The "judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* at 32. In addition, "this Court accepts as true the evidence and inferences therefrom that are favorable to the trial court's decree and we disregard all contrary evidence." *In re Marriage of Turner*, 5 S.W.3d 607, 609 (Mo.App. S.D.1999).

## I.

■ In his first point, Husband alleges the trial court erred in classifying the stock of DJ as marital property. This served as the basis for the $550,000 award to Wife to equalize property distribution. Husband argues such stock is his separate, non-marital property acquired prior to marriage.

■ In general, property acquired by a spouse prior to marriage is that spouse's separate property upon dissolution of marriage, and property acquired during the marriage is marital property subject to

division upon dissolution. § 452.330.3;[2] *In re Marriage of Medlock*, 990 S.W.2d 186, 188 (Mo.App. S.D.1999). Thus "[a] party who claims that property, presumed to be marital, is in fact separate property assumes the burden of rebutting the presumption with clear and convincing evidence...." *In re Marriage of Patroske*, 888 S.W.2d 374, 379–80 (Mo.App. S.D. 1994).

At trial Husband's attorney attempted to show that the shares of stock of DJ issued during the marriage were obtained in exchange for stock acquired prior to the marriage. Stock certificate number two was issued to Husband on December 17, 1998, which was during the marriage. Stock certificate number one, which Husband claims was exchanged for number two, displays conflicting dates. On one side, this certificate bears an issue date of December 3, 1988. The reverse side bears a date of December 30, 1998. Due to Husband absenting himself from the afternoon of the trial, no evidence was presented to explain this discrepancy nor was any additional evidence offered to trace the stock ownership to pre-marital acquisition. The evidence falls woefully short of the "clear and convincing" standard required to rebut the presumption.

■ Moreover, the trial court found, and this court concurs, that Husband's actions throughout the parties' relationship demonstrate an intent to transmute DJ into marital property. *See Ker v. Ker*, 776 S.W.2d 873, 877 (Mo.App. S.D.1989) (discussing that "[n]onmarital property may lose its character as such if there is evidence of an intention to contribute the

property to the community"). This intent to transmute property can be either express or implied. *Kramer v. Kramer*, 709 S.W.2d 157, 159 (Mo.App. E.D.1986).

The evidence in this case overwhelmingly supports the trial court's finding that it was Husband's intent to transmute DJ into marital property. Wife testified that during the course of the marriage DJ paid significant portions of the parties' personal expenses. On numerous occasions Husband told Wife she was a co-owner of the business. In both advertising and marketing materials, DJ held out Wife to be a co-owner. This clearly evidences an intent to transmute. The record is silent as to anything to the contrary. Point I is denied.

## II.

■ In his second point, Husband alleges trial court error in admitting and adopting the valuation testimony of Frank Page. Husband claims such testimony failed to comply with § 490.065, lacked foundation, and was not reasonably reliable. In particular Husband complains about Mr. Page's calculations of "goodwill."[3]

■ The decision to admit or exclude expert testimony is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *M.C. v. Yeargin*, 11 S.W.3d 604, 618 (Mo.App. E.D. 2000). "We will reverse only when the ruling of the trial court is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration." *Id.*

Section 490.065.1 states:

---

**2.** Unless otherwise noted, all statutory references are to RSMo 2000.

**3.** Goodwill has been defined as " 'nothing more than the probability, that the old customers will return to the old place.' " *Hanson v. Hanson*, 738 S.W.2d 429, 433 (Mo.

banc 1987) (quoting *Cruttwell v. Lye*, 17 Ves. 335, 346, 34 Eng. Rep. 129, 134 (Ch. 1810)). While the appropriateness of such "return" is debatable in the funeral business, neither side has raised this as an issue.

In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

The evidence at trial established that Frank Page was a certified public accountant employed by the University of Missouri at St. Louis as a professor, and also maintained a private CPA practice. It was further established that Mr. Page held bachelor's and master's degrees from Southern Illinois University, a Ph.D. in Accounting from the University of Illinois, had been a CPA since 1963, and had been valuing businesses for the past thirty-five years.

█ It cannot be reasonably disputed that Mr. Page possessed the necessary education and specialized experience to render his testimony competent and admissible. Any question about his testimony applies to the weight and not the admissibility of the evidence. " 'The trial court [was] free to believe or disbelieve all, part or none of the testimony of any witness.' " *In re Marriage of Turner*, 5 S.W.3d at 609 (quoting *In re Marriage of Sisk*, 937 S.W.2d 727, 730 (Mo.App. S.D. 1996)). Husband's second point is denied.

### III.

█ Husband's third point on appeal challenges the trial court's classification of the Account as marital property, and the subsequent judgment awarding one-half of its value ($54,000) to Wife. Husband asserts the Account was his separate, non-marital property.

█ Missouri law is clear that "[a]ll property acquired by either spouse after the marriage and before the decree of dissolution of marriage is presumed to be marital property." *Barnes v. Barnes*, 903 S.W.2d 211, 213 (Mo.App. W.D.1995). In this case, a Certificate of Deposit was purchased on May 4, 1993, and later cashed and re-deposited in 1997 in the Account. Thus, regardless of how it was titled, the Account is presumed to be marital. To overcome this presumption, Husband must show by clear and convincing evidence that the Account is his separate property. *In re Marriage of Patroske*, 888 S.W.2d at 379–80.

In support of his position Husband points to the testimony presented by his accountant, Austin Mitchell. Mr. Mitchell testified that DJ made a loan of $100,000 to Wisdom Holding Company in 1987. Husband argues that the 1993 Certificate of Deposit was funded by the payments from Wisdom on that loan.

The record is devoid of any evidence to support such a conclusion. In fact nothing was presented at trial tracing the repayment of that loan to the Certificate of Deposit, let alone to the Account. The documents admitted at trial, which purport to establish the repayment, merely reference deposits in varying amounts made over time. They fail to demonstrate by any standard, let alone by clear and convincing evidence, when, how, or *even if* the loan was repaid by Wisdom. Husband's third point is denied.

### Conclusion

The judgment of the trial court is affirmed.

HOWARD, P.J., and O'MALLEY, J., concur.